**Lea MAIDMAN, Plaintiff,**

v.

**Joseph H. O'BRIEN II and Evans & Co., Incorporated, Defendants.**

No. 73 Civ. 4018.

United States District Court,
S. D. New York.

March 16, 1979.

Lea Maidman, pro se.

Walter E. Hopper, New York City, for defendants.

Memorandum Opinion and Order

HAIGHT, District Judge:

By Memorandum and Order of this Court dated November 16, 1976 (the Opinion), this action was stayed pursuant to section 3 of the Federal Arbitration Act (the Act), 9 U.S.C. § 3, and assigned to this Court's suspense docket, pending the resolution via arbitration of plaintiff's securities law claim against the corporate defendant Evans & Company, Incorporated (Evans). Familiarity with that Opinion is assumed for the purposes of this discussion. That arbitration was conducted on May 23rd and May 27th, 1977, before a panel of five arbitrators under the auspices of the New York Stock Exchange, Incorporated. The panel rendered a decision on June 7, 1977 dismissing Ms. Maidman's claim.[1]

---

1. The text of that decision reads as follows: "We, the undersigned, being the arbitrators selected to hear and determine a matter in controversy between the above-mentioned claimant and respondent set forth in a submission to arbitration signed by the parties

Evans has now renewed its pre-arbitration motions pursuant to Fed.R.Civ.P. 12: 1) to dismiss the securities law claim in count three as to it on the basis of the arbitrators' decision; and 2) to dismiss the libel claim in count two, as a) beyond this Court's jurisdiction, and/or b) barred by the applicable statute of limitations. The individual defendant O'Brien has similarly moved to dismiss count three, as it stands against him, on the basis of the collateral estoppel effect of the arbitration and to dismiss the libel claim in count one due to the lack of jurisdiction over its subject matter. The plaintiff has opposed all these applications, objected to the arbitrators' decision, and moved for leave to amend her complaint to add the New York Stock Exchange as a defendant. For the reasons which follow, the defendants' motions to dismiss are hereby granted, plaintiff's motion is denied and this action ordered discontinued in its entirety.

## I.

*A. Evans' Motion to Dismiss Count Three on the Basis of the Arbitrators' Decision.*

■ Preliminarily, it should be noted that although Evans has not sought to have the arbitration decision confirmed pursuant to 9 U.S.C. § 9, there is authority for treating such motions to dismiss as implicitly seeking that confirmation[2] and when a party objects to an arbitration decision on the merits, the possible untimeliness of the confirmation application has been viewed as waived.[3] Consequently, the discussion will proceed with a review of the arbitration under the standards for confirming or vacating such a decision.

■ The arbitration hearing on Ms. Maidman's claim against Evans consumed just over six (6) hours on two afternoons and resulted in a transcript of 269 pages. In their decision the arbitrators gave no reasons for dismissing the claim, but they had no obligation to do so,[4] and the courts in such situations as this are instructed that "[i]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed."[5]

■ Moreover, although the failure to rule in accordance with the provisions of the securities laws would be grounds for vacating the decision, that failure must "be made clearly to appear."[6] Thus, unless there is "manifest disregard" of the applicable law,[7] or the decision evinces an other-

on October 31, 1973 and November 26, 1973 respectively; and pursuant to the Memorandum and Order of U.S. District Judge Charles S. Haight, Jr., U.S. District Court, Southern District of New York dated November 16, 1976;

"And having heard and considered the proofs of the parties, have decided and determined that the claim of the claimant be and hereby is in all respects dismissed;

"That the costs, $240.00, be and hereby are assessed against neither party."

2. As Judge Timbers observed in *Brown v. Bridgeport Rolling Mills Co.,* 245 F.Supp. 41 (D.Conn.1965):

"The Court of Appeals for this Circuit uniformly has construed Rule 54(c) to require the granting of relief to which a party is entitled irrespective of the form of action or the prayer for relief." 245 F.Supp. at 46 n. 8. It would also appear that after reviewing the pleadings, motion papers, the agreement to arbitrate, the Opinion, the prior proceedings and

the parties' conduct, there is an adequate basis for jurisdiction in this Court to enter a judgment on the arbitrators' decision. See *Kallen v. District 1199, National Union of Hospital and Health Care Employees,* 574 F.2d 723, 726 n. 6 (2d Cir. 1978).

3. *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.,* 452 F.Supp. 573, 575 (D.Neb.1978); *Riko Enterprises, Inc. v. Seattle Supersonics Corp.,* 357 F.Supp. 521, 523 (S.D.N.Y.1973).

4. *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2d Cir. 1978); *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211 (2d Cir. 1972).

5. *Kurt Orban, supra,* 573 F.2d at 740, *quoting Sobel, supra,* 469 F.2d at 1216.

6. *Wilko v. Swan,* 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Sobel, supra,* 469 F.2d at 1213.

7. *Wilko, supra,* 346 U.S. at 436, 74 S.Ct. 182; *Andros Compania Maritima, S.A. v. Marc Rich*

wise "grievously flawed character,"[8] the decision should be upheld even though there might exist an underlying misinterpretation of the law.[9]

▮ Consequently, in reviewing arbitration the courts do not attempt to analyze the reasoning employed therein, but, absent "manifest disregard" of the law, they uphold the award unless the challenging party demonstrates one of the infirmities listed in section 10 of the Act.[10] Plaintiff has, in her papers, alleged both a flagrant disregard for the law in dismissing the claim and also many of the grounds contained in section 10 of the Act.[11]

▮ A careful review of the transcript of the arbitration hearing, however, reveals none of these flaws. First, with regard to the alleged error in the decision itself, the crux of plaintiff's claim was O'Brien's "unauthorized" transactions with her securities, but as the arbitrators recognized there was a significant difference of opinion between O'Brien and Maidman as to the circumstances surrounding O'Brien's authority. If O'Brien's testimony was credited, the transactions were authorized within the meaning of the securities laws, rendering both Evans and O'Brien non-liable. No further analysis of the decision need be undertaken.

Secondly, regarding the grounds for vacating the decision, as listed in section 10, there is not the slightest hint of any such infirmities.[12] Accordingly, the defendant

---

& Co., A.G., 579 F.2d 691, 704 (2d Cir. 1978); Kurt Orban, supra, 573 F.2d at 740.

8. Kallen, supra, 574 F.2d at 726 interpreting the grounds for vacating an award as contained in 9 U.S.C. § 10(d).

9. Sobel, supra, 469 F.2d at 1214.

10. 9 U.S.C. § 10 provides:
"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
"(a) Where the award was procured by corruption, fraud, or undue means.
"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

11. Plaintiff's Reply to Affidavit and Memorandum of Law in Opposition, dated November 29, 1978.

12. Subdivision (a) permits the court to vacate an award "procured by corruption, fraud, or undue means." Subdivision (b) permits this measure where there is "evident partiality or corruption" in the arbitrators themselves. Not only does a reading of the transcript bear out none of these troubles, but rather demonstrates the arbitrators' patience and evenhanded treatment of the proceeding. See e. g. Transcript of Arbitration Hearing held May 23, 1977 and May 27, 1977 (hereinafter cited as "Tr.") at 47, 144, 167, 180. Indeed, their patience with Ms. Maidman, Tr. at 7–8, (see also 94–95 [Maidman answering questions addressed to witness], 113 [irrelevant questioning], 126–27 [irrelevant witness], 144 & 159 [suggestions]) is to be commended. Indeed, the arbitrators undertook to question the key witness, Mr. O'Brien, themselves, Tr. at 242–58. On top of all this the record contains the words of Ms. Maidman herself who remarked the arbitrators were being "understanding" (Tr. at 7) and were "expert in the field" (Tr. at 26) and "all very patient" (Tr. at 162).

Combined with Ms. Maidman's stating she had no objection to the disclosure of the one colorable impartiality, Tr. at 12–13, I can discern absolutely nothing in the record which would correspond to either subsections 10(a) or (b). Insofar as the plaintiff avers misconduct as described in subsection (c), she is again without support in the record. Every document and witness she sought to add to the record, relevant or not, was received. In the one instance when she suggested she wanted an absent potential witness (Mr. Evans, Tr. at 172), she conceded she could have subpoenaed him, id., and the gist of Mr. Evans' proposed testimony was stipulated to, id. Moreover, after Mr. Bradley's testimony it was clear Mr. Evans could contribute nothing further and Ms. Maidman made no suggestion to the contrary.

When unrestricted proof, such as the above discussion demonstrates, is combined with the freedom of argument Ms. Maidman was per-

Evans would be entitled to confirmation of the decision and is hereby granted its motion to dismiss count three of the complaint, as such count stands as to it.

### B. Evans' Motion to Dismiss Count Two.

█ Count two seeks damages from Evans due to the alleged defamation Ms. Maidman suffered as a result of Evans' "publication"[13] on February 23, 1973 of an allegedly libelous statement authored by O'Brien. This claim was asserted for the first time against Evans in the amended complaint which was sworn to on June 18, 1976 and served on Evans' counsel's office July 16, 1976.[14] Evans submits such a claim is barred by the one-year statute of limitations prescribed in N.Y.C.P.L.R. § 215.[15]

Evans is correct. Under such circumstances the action was not "commenced" against Evans within one year after publication. *Kern v. Hettinger,* 303 F.2d 333 (2d

Cir. 1962). Accordingly the second count is hereby ordered dismissed.[16]

### II.

### O'Brien's Motion to Dismiss Count Three on the Basis of the Collateral Estoppel Effect of the Arbitrators' Decision.

█ It is well settled that the related doctrines of *res judicata* and collateral estoppel are properly applied to arbitration decisions.[17] The defensive use of the collateral estoppel effect of arbitration, as sought herein by O'Brien, has been sanctioned in this circuit for some time. In *Ritchie v. Landau,* 475 F.2d 151 (2d Cir. 1973), an individual successfully raised the defense of collateral estoppel to a claim which had been dismissed by the decision in a prior arbitration against the corporation, the individual's employer. The Court, applying New York State principles of collateral estoppel in a diversity action,[18] observed per Judge Waterman:

mitted, see e. g. Tr. at 13–19, 106–08, 110–17, 164–65, there is no doubt but that she was afforded every indulgence permissible in an adversary context.

Finally, with regard to the provision in subsection (d) proscribing arbitration on questions beyond the proper scope of the submission, no excess of authority existed in the dismissal of plaintiff's claim.

13. The "publication" occurred, according to the complaint, by virtue of the forwarding of O'Brien's memorandum to the New York Stock Exchange's Division of Inquiries and Complaints. Complaint ¶ 14.

14. The record date of filing this amended complaint is uncertain, but of necessity is between June 18th and July 16th, 1976. Where, in this period, is not material to the holding herein. It might also be noted that the earliest date plaintiff moved to amend her complaint to add Evans as a defendant was October 28, 1975. Opinion at 3. Even this date is well after the one-year period after "publication" had expired.

15. This claim's jurisdictional basis is that it is pendent to the securities claims. New York state law governs this issue.

N.Y.C.P.L.R. § 215 reads in relevant part:
"The following actions shall be commenced within one year: . . .
"3. an action to recover damages for . . . libel, slander, false words causing special damages . . . ."

For an example of this limitations period being applied, see *Williams v. Arpie,* 56 A.D.2d 689, 391 N.Y.S.2d 740 (3d Dept. 1977), *aff'd,* 44 N.Y.2d 689, 405 N.Y.S.2d 437, 376 N.E.2d 909 (1978).

16. This dismissal, grounded on the statute of limitations which governs this claim, is not to be interpreted as intimating that plaintiff has stated an otherwise-valid claim for libel against Evans. It is subject to some question, whose resolution must come at a later day in another court, whether O'Brien's statement, in the factual and procedural context where it was uttered, constituted defamation.

17. *American Renaissance Lines, Inc. v. Saxis Steamship Co.,* 502 F.2d 674, 678–79 (2d Cir. 1974); *Ritchie v. Landau,* 475 F.2d 151 (2d Cir. 1973).

For a view of the Supreme Court's distinctions between the two doctrines, see *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, at 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Lawlor v. National Screen Service,* 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

18. "In determining whether one not a party to a prior proceeding can successfully raise the defense of collateral estoppel as to an issue which had been litigated in that prior proceeding, New York State has adopted the 'full and fair opportunity' test. Under this test the defense is available if the party against whom it is raised has had a full and fair opportunity to contest the issue in a prior action and the issue

"[W]e have held that one not a named party to an arbitration proceeding can successfully rely in defense of a court action upon the collateral estoppel doctrine when the party suing him had been given a full opportunity to litigate the issue in a prior arbitration proceeding. *Goldstein v. Doft,* 236 F.Supp. 730 (SDNY 1964), aff'd 353 F.2d 484 (2 Cir. 1965), cert. denied, 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966); see *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956). Although plaintiff attempts to distinguish *Goldstein v. Doft, supra,* on the ground that plaintiff Goldstein 'lost' in the arbitration proceedings, while plaintiff Ritchie 'won,' this attempted distinction is clearly without merit. The critical fact in both cases is that the plaintiffs were given one opportunity to litigate their claims for compensation before the arbitrators; and one opportunity is all they are entitled to have." 475 F.2d at 155–56 (footnote and citation omitted).

The *Goldstein* case has been cited with approval by the Supreme Court for the principle that collateral estoppel should apply in appropriate circumstances "to prevent relitigation of factual disputes resolved by an arbitrator." [19] As in the *Ritchie* case, this defense can be raised in an action which began before arbitration, and warrant dismissal after the arbitration is completed.

█ The claims at issue here, being securities law claims, are governed by federal law and thus the federal courts must apply their own rules governing collateral estoppel.[20] Yet, despite the exclusive jurisdiction over such claims in federal courts, determination of necessary factual issues elsewhere can be given collateral estoppel here.[21] To the extent that there may remain any significant distinction between collateral estoppel's application under "general federal law" versus New York State law, this Court views such differences as immaterial to our situation.[22] Accordingly, the following discussion will focus on two prerequisites to invocation of the collateral estoppel defense, which must be established here: first, " 'an identity of issue which has

---

which was decided in the prior action is identical to the issue which is to be decided in the action in which the defense is raised." 475 F.2d 155 (footnote and citations omitted).

The Supreme Court in *Parklane Hosiery, supra,* applied the " 'full and fair' opportunity" standard to the offensive use of collateral estoppel in a case where federal, not New York State, principles governed the applicability of collateral estoppel. At 332, 99 S.Ct. at 652. The Court held it to be within the trial courts' "broad discretion" whether to permit its use, suggesting that a stronger showing of the adequacy of the prior opportunity may be required in prayers for offensive use than in defensive use. At 331 and n. 16, 99 S.Ct. at 651.

19. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

See also *James L. Saphier Agency, Inc. v. Green,* 190 F.Supp. 713 (S.D.N.Y.), aff'd, 293 F.2d 769 (2d Cir. 1961), where an arbitration award determining rights of theatrical performer and agency was valid defense under collateral estoppel in the agency's court action against its former employee on the same transactions.

20. *Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation,* 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

21. *Vernitron Corporation v. Benjamin,* 440 F.2d 105, 108 (2d Cir.), cert. denied, 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971); see *Overseas Motors, Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. 499, 521 n. 74 (E.D.Mich.1974), aff'd 519 F.2d 119 (6th Cir.), cert. denied, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975).

22. In *Winters v. Lavine,* 574 F.2d 46 (2d Cir. 1978) Judge Waterman discussed the doctrine of collateral estoppel at some length, and noted the variations in its implementation under the general federal law and New York State law. The respective authorities' applications of the doctrine of *res judicata* were viewed as significantly different. 574 F.2d at 58. Judge Waterman suggested, however, that in federal cases where the doctrine of collateral estoppel is being invoked by parties who were not parties to the prior action, the two bodies of law are in accord, both requiring a " 'full and fair' opportunity" to litigate in the prior action, 574 F.2d at 58–59 n. 14. Judge Waterman characterized this situation as being one where the federal court rejects the "traditional requirement of mutuality of estoppel" which has received increasing criticism, has been rejected in New York, and may have dim prospects in the federal courts in the wake of *Blonder-Tongue* and *Parklane Hosiery.*

necessarily been decided in the prior action and is decisive of the present action, and, second, . . . a full and fair opportunity to contest the decision now said to be controlling.' " [23]

With regard to the identity of the issue necessarily decided in the arbitration and decisive of the present claim, we must begin our analysis by resolving what issues were submitted to the arbitrators. The submission, pursuant to the agreement of Ms. Maidman and Evans, included all claims against the latter arising out of the alleged securities law violations. Opinion at 5. These were the claims charged in count three of the complaint, which essentially accuses O'Brien of improper trading in Ms. Maidman's securities and Evans' vicarious liability therefor. Opinion at 8. The only "culpable" conduct mentioned in count three which was not that of O'Brien himself was either Evans' officers approving O'Brien's dealings [24] or failing to take the necessary corrective measures when Ms.

---

**23.** *Winters, supra,* 574 F.2d at 59 n. 14, *quoting Schwartz v. Public Administrator,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969).

There have been other formulations of the requirements for collateral estoppel in the federal courts. For example, in *Overseas Motors, supra,* 375 F.Supp. 499, the Court listed five preconditions to the doctrine's availability.

"There must be a final and valid judgment affecting the same (or similarly situated) parties as appear in a second action; (2) the issue to be concluded must be the same as that involved in the prior action; (3) the issue must have been raised, considered, and actually adjudicated in the prior action; (4) the issue must have been material and relevant to the disposition of the prior action; and (5) the resolution of that issue must have been essential to the judgment entered (i. e., not dictum)." 375 F.Supp. at 510–11 (footnotes omitted).

Cognizant that the Second Circuit has given the "finality" requirement for collateral estoppel a liberal interpretation, *see Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Crane Co. v. American Standard, Inc.,* 490 F.2d 332, 339 n. 10 (2d Cir. 1973); *Sherman v. Jacobson,* 247 F.Supp. 261, 268 (S.D.N.Y.1965); *cf. Acha v. Beame,* 570 F.2d 57, 64 n. 8 (2d Cir. 1978); all of the above-listed requirements would appear at least implicitly included in the two broader preconditions discussed in the text. To the extent any are not, I see no genuine dispute as to their presence in the record and consequently find them to be satisfied.

There may also be a somewhat different formula suggested in the recent Supreme Court opinion in *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), which discussed the standard a federal court should apply in resolving the collateral estoppel effect of Montana State court decisions on the United States Government, a non-party thereto. After reviewing the considerations underlying application of the doctrines of *res judicata* and collateral estoppel, at 153–155, 99 S.Ct. at 973–975 and concluding that, although a non-party, the United States "had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel," at 155, 99 S.Ct. at 975, the opinion of Justice Marshall continued:

"To determine the appropriate application of collateral estoppel in the instant case necessitates three further inquiries: first, whether the issues presented by this litigation are in substance the same as those resolved against the United States in [the state-court decision]; second, whether controlling facts or legal principles have changed significantly since the state-court judgment; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion."

The Court's analysis at this point had, in effect, already resolved the " 'full and fair' opportunity" test in the "laboring oar" conclusion, the corresponding requirement to which in the instant case is resolved *infra.* The first inquiry listed above, the "identity of the issues," is also dealt with in the text, *infra,* and thus neither will be discussed in this footnote.

However, regarding the second test in the above quote: "whether controlling facts or legal principles have changed significantly since the [prior decision]," I hereby hold no such change has occurred. See discussion in *Montana,* at 157–162, 99 S.Ct. at 976–978. Regarding the third inquiry: whether special circumstances warrant an exception to the general rules of collateral estoppel, this Court can perceive no such compelling circumstances (e. g., properly-invoked federal constitutional claims determined, without the consent of the party, by a state court) in the instant case. See discussion in *Montana,* at 162–163, 99 S.Ct. at 978–979.

Accordingly, to the extent the *Montana* opinion provides additional prerequisites to the application of collateral estoppel's defensive use, I find such requirements satisfied in our case. The requirements warranting more extensive discussion (identity of issue and " 'full and fair' opportunity"), receive their address in the text *infra.*

**24.** Complaint ¶ 22.

Maidman complained.[25] O'Brien is not charged with any conduct, and resultant liability, in count three which is not also charged against Evans, which Ms. Maidman averred was "responsible for all his [O'Brien's] actions."[26]

After reviewing all the pleadings and submissions presented in the instant record and the transcript of the arbitration hearing it is clear that whatever charges in count three are not attributable to O'Brien were asserted to prove Evans' liability under a theory of "respondeat superior," or speak to misconduct unrelated to O'Brien's acts. There was never any suggestion that action on behalf of Evans could excuse Evans of any aspect of O'Brien's alleged misconduct or provide Evans with an affirmative defense thereto. Consistent with this understanding was Evans' position throughout the arbitration to defend O'Brien's acts on the merits, and not submit proof on factual issues other than O'Brien's action. Thus both Evans and O'Brien stood charged with liability for the same acts—those of Mr. O'Brien.[27] For Evans to be held non-liable it was a necessary ingredient of such a holding that O'Brien's acts, independent of action by Evans' other employees, did not constitute violations of the securities laws. Thus to dismiss the claims against Evans the arbitrators necessarily determined that O'Brien's acts, as if he were a party before

them, warranted no relief to Ms. Maidman and should have been dismissed also.

This was clearly set forth in this Court's prior Opinion in the instant case, which recognized the securities law claim against Evans as "arising from alleged improper trading of Maidman securities by O'Brien while in the scope of his employment with Evans." Opinion at 4. As was observed:

"Although not explicitly stated the gist of the Maidman claim against Evans is based on a theory of 'respondeat superior', in that O'Brien was acting within the scope of his employment during his transactions with Maidman. As a practical matter the liability of Evans for the acts of O'Brien will be a paramount issue facing the arbitrators. Since the alleged liability of Evans for the acts of O'Brien is vicarious in nature, the arbitrators must make the threshold determination of whether the actions of O'Brien vis-a-vis Maidman were improper in the first instance. In making such findings the arbitrators will be reviewing the same facts which Maidman relies on in support of her claim in this Court against O'Brien individually." Opinion at 8.[28]

The transcript of the arbitration hearing clearly indicates this orientation was shared by both the adversaries and the arbitrators—the primary issue was the validity of O'Brien's transactions.[29] To the extent oth-

---

25. Complaint ¶¶ 39–43, 46(e), 47–52.

26. Complaint ¶ 22.

27. Compare the role of the individual Landau in the *Ritchie* case, *supra*, 475 F.2d at 154–55 & n. 2.

28. After quoting from an opinion by Judge MacMahon, which reached a similar conclusion, in *Tepper Realty Company v. Mosaic Tile Company*, 259 F.Supp. 688, 693 (S.D.N.Y.1966), the Opinion continues:

"Despite the absence of an agreement to arbitrate as between Maidman and O'Brien, this Court believes that the alter ego relationship of Evans as employer and O'Brien as employee compels a stay of the securities claims asserted by Maidman against both defendants pending the outcome of the arbitration between Evans and Maidman. Accord, *Universal Oil Products Company v. S.C.M. Corp.*, 313 F.Supp. 905, 906 (D.Conn.1970);

cf. *Bunge Corporation v. MV Furness Bridge*, 390 F.Supp. 603, 605–606 (E.D.La.1974)." Opinion at 10.

29. Of the five witnesses called by Ms. Maidman, the first four (Foster, Lyons, Shiland and Van Weezel) were exclusively for the purpose of refuting O'Brien's deposition testimony, see Tr. at 82 (re: Foster), Tr. at 92–93 (re: Lyons), Tr. at 112–116 (re: Shiland), Tr. at 123–127 (re: Van Weezel, irrelevant due to lack of contact with O'Brien). The testimony of the fifth witness, Mr. Bradley, was focused primarily on O'Brien's actions, see e. g., Tr. at 137–142, 149–51, even when he was incompetent to testify on particular occurrences, see e. g., Tr. at 155–56, 165–68, 191–92. Any other matters to which Mr. Bradley's attention was directed were independent of any liability Evans might suffer from vicarious responsibility for O'Brien's acts.

The arbitrators repeatedly voiced their recognition that the crux of the case was O'Brien's

er matters were raised they were irrelevant to this issue and thus irrelevant to this discussion.[30] Accordingly I find the issue of the validity of O'Brien's transactions under the securities laws to have been necessarily resolved in the arbitration decision and to be controlling of any liability of O'Brien under count three of the complaint.[31]

The last requirement, that there be a "full and fair opportunity to contest the decision now said to be controlling" warrants little further discussion. At the arbitration hearing Ms. Maidman suffered absolutely no constraints in the submission of documentary proof, the testimony of herself and other witnesses, cross-examination of Mr. O'Brien and her own argument. As was noted *supra,* even Ms. Maidman considered the arbitrators patient, fair and knowledgeable in the field. Additionally, a reading of the transcript makes it obvious

to this Court that the arbitrators recognized the controlling issues of fact.[32]

The sole aspect of the arbitration proceeding which sheds the slightest shadow of doubt as to its "fairness"[33] is Ms. Maidman's *pro se* status. However, the procedural history of this action erases any notion of such unfairness. Ms. Maidman requested, and received in March 1974, an adjournment of the arbitration proceedings so that she might retain counsel, Opinion at 2, but she never succeeded in this endeavor in the three years thereafter, and the arbitration went ahead. Although Ms. Maidman on several occasions voiced her desire that counsel be appointed for her in this proceeding, as in the arbitration, ultimately she has had to make her case alone. Under these circumstances I must accept the fact of her continued *pro se* status as a reality of the case which does not infect an otherwise entirely fair proceeding.[34] I conclude she

testimony, Tr. at 75–76, 79, 97–98, 119, 136, 156–57, and noted Ms. Maidman's attempts nevertheless to question other witnesses regarding such matters, see e. g., Tr. at 126–27, 140–42, 155–56, 171.
To her credit, Ms. Maidman's examination of other witnesses was, no doubt, an effort to refute Mr. O'Brien's version of the salient events. Nevertheless, this realization only further supports the conclusion that the essence of her claims was improper trading by Mr. O'Brien, nothing more and nothing less.

**30.** As the text suggests, this Court views Evans' "non-O'Brien" actions which were charged in count three to be essentially of two categories. The first contains those facts necessary to create vicarious liability for O'Brien's acts. See *e. g.* Complaint ¶ 22 ("As employers of defendant O'Brien, Evans were and are responsible for all his actions."). Evidence supportive of this relationship was submitted by Ms. Maidman in the questioning of Mr. Bradley as to the approval of O'Brien's transactions, see Tr. at 137–140, 150–51. Evans did not contest its approval, for the purposes of the arbitration, however, see Tr. at 172–73. Recognizing the absence of any credible evidence in the record or the argument of either party to the effect that "respondeat superior" was inapplicable, I conclude that to absolve Evans of any liability for O'Brien's acts it was necessary to hold those acts in and of themselves non-violative of the securities acts.
The second category of Evans' "non-O'Brien" acts includes those measures taken by Evans' agents which were entirely unrelated to the transactions in Ms. Maidman's securities by

O'Brien. See e. g. Tr. at 164 (explanation of Eastman Kodak dividend). These actions could not conceivably absolve Evans of responsibility for O'Brien's actions and, therefore, the above conclusion remains valid—for Evans to be found not liable, O'Brien's acts necessarily were determined not to violate the securities laws. *Contrast Kern v. Hettinger,* 303 F.2d 333, 341 (2d Cir. 1962) (collateral estoppel inapplicable where basis of co-defendants' liability was not necessarily the same).

**31.** This conclusion corresponds to the inquiry which this Court is directed to pursue by the *Montana* opinion, see discussion in n. 23 *supra,* in determining "whether the issues presented by this litigation are in substance the same as those resolved against the [estopped party] in [the prior action]." At 155, 99 S.Ct. at 975. The issues in this case are not merely "in substance the same," but rather are *precisely* the same, to wit—identical.

**32.** See e. g., Tr. at 75–77, 242.

**33.** See *Montana, supra,* 440 U.S. at 164 & n. 11, 99 S.Ct. 979; *Parklane Hosiery, supra,* 439 U.S. 322, at 330–332 (unfairness may result if the second action affords procedural opportunities unavailable in the first action).

**34.** A brief quotation from the appellate court's *per curiam* affirmance in the *Goldstein* case appears apt:
"Appellant was afforded the fullest opportunity to present his proofs to the arbitrators and he did so. Arbitration would be of little

**34**

had a full and fair opportunity to contest the facts O'Brien posits she is now estopped from relitigating.

Having determined that the requirements for the invocation of collateral estoppel are present in this claim, O'Brien's motion to dismiss count three of the complaint is hereby granted.

### III.

*O'Brien's Motion to Dismiss Count One*

■ With the above dismissals of the securities law claims, and the acknowledged absence of any remaining federal claims or diversity of citizenship, O'Brien moves to dismiss count one for lack of this Court's jurisdiction over that sole remaining claim. It was only asserted to be within this Court's jurisdiction as "pendent" to the securities claims.

The landmark Supreme Court case on pendent jurisdiction is *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) where Justice Brennan, writing for the Court, opined:

> "That power [to adjudicate state-law claims] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Needless decisions of state law should be avoided both as a matter of

comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139 (footnotes omitted).

In addition to the strongly-worded suggestion in *Gibbs* that in this situation a district court "should" in its discretion decline to exercise jurisdiction over surviving state-law claims, it is this Court's understanding that Ms. Maidman would be permitted six (6) months from the date of this Memorandum Opinion and Order in which to file this claim, contained in count one, in state court.[35] Accordingly, O'Brien's motion to dismiss count one is hereby granted and the claim is dismissed without prejudice. All of the dismissals ordered *supra* are without costs.

With regard to O'Brien's counterclaim, for the reasons stated above in respect to count one of the complaint, this counterclaim is also dismissed without prejudice and without costs. This would also appear to be the action sought by O'Brien's counsel.[36]

In view of the decisions reached *supra,* the parties' requests to remove this action from the suspense docket and restore it to the active calendar are moot.

The Clerk of the Court is hereby directed to enter a judgment dismissing the complaint, as follows:

(1) dismissing count one of the complaint as to defendant O'Brien, without prejudice and without costs;

---

value if the entire controversy or any part thereof could be reopened later by a mere change in the words or phrases used to characterize the matters included in the claim the arbitrators had rejected." *Goldstein v. Doft,* 353 F.2d 484 (2d Cir. 1965), *cert. denied,* 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966), *aff'g,* 236 F.Supp. 730 (S.D.N.Y.1964).

**35.** N.Y.C.P.L.R. § 205(a) (McKinney, Supp. 1978).

See e. g. *Smith v. Rensselaer County,* 52 A.D.2d 384, 384 N.Y.S.2d 223 (3d Dept.1976) (claim

dismissed by federal court for lack of subject matter jurisdiction can be filed in state court within six months thereafter, provided federal action was timely filed).

For authority as to when the six-month period begins to run, see *Dinerman v. Sutton,* 45 Misc.2d 791, 258 N.Y.S.2d 13 (Sup.Ct. Queens County 1965) (period runs from date of order of dismissal, not date party is served).

**36.** See Affirmation of Walter Hopper, Esq., dated August 4, 1976.

(2) dismissing count two of the complaint as to defendant Evans, with prejudice and without costs;

(3) dismissing count three of the complaint as to both defendants, with prejudice and without costs.