**Abdallah W. TAMARI, et al., Plaintiffs,**

v.

**BACHE & CO. (LEBANON) S.A.L., Defendant.**

**No. 75 C 4189.**

United States District Court, N.D. Illinois, E.D.

April 14, 1986.

---

Boodell, Sears, Sugrue, Giambalvo & Crowley, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

In this action under the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 6b and 6c, plaintiffs Abdallah W. Tamari, Farah W. Tamari, and Ludwig W. Tamari, individually and as copartners ("the Tamaris"), seek over $2,000,000 in damages from defendant Bache & Co. (Lebanon) S.A.L. ("Bache Lebanon"). This matter is currently before the court on plaintiffs' motion for reconsideration of this court's January 7, 1986 order and defendant's motion for summary judgment. [Available on WESTLAW, DCTU database].

### Plaintiffs' Motion for Reconsideration

On January 7, 1986 the court ruled on several motions in limine presented by both parties. Plaintiffs now urge reconsideration of three rulings made in that order. In the first ruling under reconsideration, the court invoked the principle of collateral estoppel to bar much, if not all, of the Tamaris' claims. It is this ruling which plaintiffs most seriously contend is incorrect. The court also ruled that the plaintiffs have not pled breach of fiduciary duty as a separate claim in their complaint. Finally, the court ruled on the permissible use of the Cook Grain account at trial.

### 1. Collateral Estoppel

In the January 7, 1986 order, this court decided to apply collateral estoppel to preclude the Tamaris from litigating any claim concerning the lawfulness of Bache Lebanon's actions performed within the scope of its authority as agent for Bache Delaware. This ruling was based on the existence of an arbitration decision by the Arbitration Committee of the Chicago Board of Trade of the City of Chicago (the "CBOT") in which the CBOT dismissed the Tamaris' counterclaim against Bache Delaware for the allegedly wrongful acts of Bache Delaware and its agent Bache Lebanon. In

Michael W. Coffield, Daniel J. Pope, Susan Franzetti, Chicago, Ill., for plaintiffs.

deciding to invoke collateral estoppel, this court reasoned that:

> [t]he arbitration decision, however, in relieving Bache Delaware of liability, did necessarily determine that the acts of Bache Lebanon taken within the scope of its agency were not unlawful; were it otherwise, the arbitration panel would not have been able to relieve Bache Delaware, the principal, of liability. (Mem.Op. and Order dated 1/7/86, at 7).

The court now examines the correctness of this ruling.

On June 21, 1976, the CBOT entered its decision on the Tamaris' counterclaim against Bache Delaware. This counterclaim sought to hold Bache Delaware legally accountable for its own unlawful acts and for the unlawful acts committed by Bache Lebanon within the scope of Bache Lebanon's agency authority. The decision stated simply that "[w]e, the undersigned, being a majority of the arbitrators selected to hear [this matter] ... have decided and determined that the counterclaim of respondents [the Tamaris] be and hereby is dismissed." No opinion was issued explaining the basis of or reasons for the dismissal.

On June 29, 1977, Bache Lebanon first moved to dismiss the Tamaris' action in this case on the grounds of collateral estoppel. In treating the motion as one for summary judgment, Judge Grady ordered Bache Lebanon to direct the court to the specific pages of the transcript of the arbitration proceedings which might indicate the basis for the CBOT's dismissal of the Tamaris' counterclaim. See Order dated 1-6-78. Based on that supplemental record, Judge Grady on March 17, 1978 denied Bache Lebanon's motion for summary judgment on the issue of collateral estoppel. In that order, Judge Grady held as follows:

> We can assume, based on the dismissal of the counterclaim, that the committee found the evidence concerning Bache Lebanon did not give rise to liability on the part of Bache Delaware. However, it is impossible to tell from the excerpted transcripts whether this conclusion was based on a finding that Bache Lebanon

did not engage in any misconduct or that Bache Lebanon was not an agent of Bache Delaware, or that for some other reason Bache Delaware should not be found liable for the alleged mishandling of the Tamaris' accounts. There is therefore some question as to whether any issue concerning Bache Lebanon's liability was actually decided by the arbitration committee." (Mem.Op. dated 3-17-78, at 3-4).

Judge Grady and I, therefore, have reached somewhat different, though not necessarily inconsistent, conclusions concerning the applicability of collateral estoppel to the CBOT decision. To resolve the discrepancy, I have carefully reviewed the CBOT transcript and the case law regarding collateral estoppel and am now prepared to clarify my previous order.

 Generally, "there is good reason to treat the determination of issues in an arbitration proceeding as conclusive in a subsequent proceeding, just as determinations of a court would be so treated." Restatement (Second) of Judgments § 84 comment c (1980). *See also Ritchie v. Landau,* 475 F.2d 151 (2d Cir.1973). The first step, therefore, in applying collateral estoppel to issues that were determined in a previous proceeding is to figure out exactly which issues were in fact "determined." *Jones v. Alton,* 757 F.2d 878, 885 (7th Cir.1985). As Bache Lebanon correctly observes, in deciding what the CBOT determined, this court must make an examination of the record, including the pleadings, the evidence submitted, and any findings of the arbitrator. *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). The court must decide, based on this record, whether a rational factfinder could have reached a conclusion based upon an issue other than that which the defendant seeks to foreclose from consideration. *See Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered

"determined" by the factfinder, even if no explicit finding of that issue has been made. *See id.* Nonetheless, the party asserting the preclusion of an issue bears the burden of showing "with clarity and certainty" what was determined by the prior judgment. *Jones v. Alton*, 757 F.2d at 885. *See also* Restatement (Second) of Judgments § 27 comment d (1980); *Redfern v. Sullivan*, 111 Ill.App.3d 372, 377, 67 Ill. Dec. 166, 444 N.E.2d 205 (4th Dist.1982); *O'Neill v. Delaney*, 92 Ill.App.3d 292, 47 Ill.Dec. 947, 415 N.E.2d 1260 (1st Dist. 1980); *Gale v. Transamerica Corp.*, 65 Ill.App.3d 553, 22 Ill.Dec. 92, 382 N.E.2d 412 (1st Dist.1978); *Gonyo v. Gonyo*, 9 Ill.App.3d 672, 292 N.E.2d 591 (2d Dist. 1973). In the absence of this showing, the preclusion of an issue is inappropriate. *Jones*, 757 F.2d at 886.

With these principles in mind, the record in this case reveals the following. The Tamaris' counterclaim alleged, in part, that Bache Lebanon was an agent of Bache Delaware. (CBOT Counterclaim at ¶¶ 12, 15(b) and (c), 16, 18). It is important to note that these counterclaim paragraphs also allege substantive wrongdoing by Bache Delaware and Bache Lebanon. In fact, it is only in the course of alleging these substantive wrongdoings that those paragraphs make reference to "Bache & Co. Incorporated [Bache Delaware], acting with and through its Agent, Bache & Co. (Lebanon)." Bache Lebanon in its answer denied the allegations of these paragraphs generally. (CBOT Counterclaim Answer at ¶¶ 2, 24, 25, 28, and 51). Thus, while the existence of an agency relationship and its exact scope was never specifically denied, Bache Lebanon's denial of an agency relationship can reasonably be inferred from its general denial of the allegations in the above-cited counterclaim paragraphs.

The transcript of the proceedings indicates further ambiguity on the issue of the existence or extent of an agency relationship. In speaking before the CBOT, Bache Delaware's counsel, James Giambalvo, argued that Bache Lebanon never received any commission from the Tamaris' transactions; Bache Lebanon merely rented space to Bache Delaware. The Tamaris now argue that this statement is an indication that Bache Delaware did not hold out Bache Lebanon as an agent before the CBOT. It is difficult to glean from a terse remark about commissions, made by a lawyer for Bache Delaware, a more general contention that Bache Lebanon did not act as an agent for Bache Delaware in any respect. Rather, Giambalvo's statement merely denies that Bache Lebanon was responsible for the singular activity of receiving commissions on behalf of Bache Delaware for the Tamaris' transactions.

The evidence that was put before the CBOT suggests more strongly that there may have been some sort of agency relationship between Bache Lebanon and Bache Delaware, but the scope of that agency is anything but clear. Bache Delaware repeatedly referred to the operations of Bache Lebanon as one of its "branch offices." (See CBOT Tr. dated 1–7–76 at 32–34, 37–38, 40; dated 2–12–76 at 6, 9–10, 17, 21, 70; dated 5–17–76 at 8–9, 11). Nicholas Bonadies, a Bache Delaware employee in charge of the Commodity Credit and Margin Departments, testified that Bache Lebanon "more or less" acted as an agent for Bache Delaware, but he did not know the circumstances surrounding the formation of Bache Lebanon. (CBOT Tr. dated 1–7–76 at 42). Bonadies also testified later that "Bache Lebanon acts as agent for Bache, Inc." when Bache Lebanon receives orders from customers for Bache Delaware. (*Id.* at 59–60). Finally, Robert Fivian, an officer of Bache Delaware in charge of Bache Delaware's Chicago Commodity Service Center, testified that although he did not know the exact nature of the relationship between Bache Lebanon and Bache Delaware, he "would assume that [Bache Lebanon] also is a subsidiary corporation." (CBOT Tr. dated 2–12–76 at 21).

■ Taking the pleadings, arguments, evidence, and final CBOT decision together, the court cannot say that the CBOT's dismissal of the counterclaim against Bache Delaware was necessarily based on a finding that all of Bache Lebanon's actions

were committed within the scope of its agency and were entirely lawful. This is because the record does not disclose how broad the CBOT found the agency relationship to be, i.e., whose testimony was believed, and given the ambiguous testimony before the CBOT, the record is susceptible to many differing views of the extent of the agency. Therefore, it is entirely possible that the CBOT absolved Bache Delaware of misconduct because it found that many or perhaps all of the acts of which Bache Lebanon was accused fell outside the scope of its agency, so that the legality of those acts was irrelevant to a counterclaim against Bache Delaware. In that event, the lawfulness of Bache Lebanon's acts would not have been determined. The record does seem to indicate that the CBOT must have found that there was some sort of agency relationship between Bache Lebanon and Bache Delaware. But the critical issue—which was not determined explicitly or implicitly—is the scope of that agency. In order for the issue of lawfulness of Bache Lebanon's actions to be precluded by collateral estoppel, this court must be able to conclude that the CBOT not only determined that Bache Lebanon was an agent of Bache Delaware, but that all or certain of the acts of which it had been accused in the counterclaim were within the scope of that agency. Because no determination of the scope of the agency was made, this court cannot conclude that the CBOT "determined" that all, or even any part, of the acts of which Bache Lebanon was accused were committed within the scope of that agency. Therefore, Bache Lebanon cannot use collateral estoppel to preclude the litigation of the lawfulness of those acts here.

Thus, the court modifies its January 7, 1986 order as follows. Although the CBOT must have found there to be some sort of agency relationship between Bache Lebanon and Bache Delaware, the arbitration decision did not determine the scope of that agency. Therefore, there is no way for this court to decide which acts of Bache Lebanon were found to be within that agency authority, and therefore by implication lawful, and which acts were found to be outside the authority, in which case the

lawfulness was not decided. Because the court cannot determine "with clarity and certainty" which, if any, of Bache Lebanon's acts the CBOT determined to be lawful, the Tamaris are not collaterally estopped from litigating the lawfulness of any of the acts of which they accused Bache Lebanon in the CBOT counterclaim and then again in this action. *See Jones v. City of Alton,* 757 F.2d at 886.

This view is consistent with the cases cited by both Bache Lebanon and the Tamaris. Under those cases, a plaintiff is collaterally estopped from litigating the lawfulness of an agent's actions only if in a prior full and fair litigation between the plaintiff and the principal, those actions were determined or agreed to be within the scope of the agency and the principal was absolved of wrongdoing. If the determination of the scope of the agency was not made, or could not be surmised, collateral estoppel is not appropriate. *Compare Gulf Tampa Drydock Co. v. Germanischer Lloyd,* 634 F.2d 874 (5th Cir.1981) (no clear finding of agency made or stipulated in prior action; collateral estoppel not applied) *with Maidman v. O'Brien,* 473 F.Supp. 25, 32 (S.D.N.Y.1979) (in prior action against principal, principal defended agent's actions on merits and did not dispute that those actions were authorized by the agency; collateral estoppel applied). Here, as just explained, there was no determination of the scope of Bache Lebanon's agency, and there was no agreement before the CBOT that the actions of which Bache Lebanon was accused were within the scope of a particular agency. Therefore, this court cannot determine which, if any, of Bache Lebanon's actions were judged to be lawful in the CBOT proceeding. Collateral estoppel should not be used to prevent litigation of the lawfulness of those actions here.

In view of this conclusion, it is unnecessary to reach a decision on the Tamaris' remaining arguments for why collateral estoppel is inappropriate here. The Tamaris are not collaterally estopped from litigating the lawfulness of any of the acts of which

they accused Bache Lebanon before the CBOT and then again in this action.

## 2. Fiduciary Duty Claim

■ In the January 7, 1986 order, this court also denied the Tamaris' motion to find that the complaint in this action put into issue a claim for Bache Lebanon's breach of fiduciary duty. However, the court did hold that the Tamaris would be permitted to argue the existence of a fiduciary duty in connection with their claims under the CEA and for common-law fraud. The Tamaris now seek reconsideration of the court's limitation of the breach of fiduciary duty claim.

In that January 7 order, the court also denied the Tamaris' request to have a negligence claim deemed in issue. The basis for that denial was that no reasonable notice to Bache Lebanon of a negligence claim could be gleaned from the complaint, and it was too late in the course of this litigation (ten years after filing and six weeks before trial) to surprise the defendant with an entirely new theory of recovery. The Tamaris do not now take issue with the court's decision to refuse to acknowledge a negligence claim. However, it was the same concern for unfair surprise and prejudice to the defendant from a negligence theory of recovery that prompted the court to hold that there was no independent claim for breach of the fiduciary duty in the complaint. Because a fiduciary duty claim would encompass both negligent and intentional misconduct, and because Bache Lebanon had been given no reason to pursue any discovery along the lines of a defense for negligent misconduct, the court concluded that the Tamaris should not be allowed to litigate at trial a claim involving negligent behavior, including negligent breach of a fiduciary duty.

It is true, as the Tamaris argue, that the complaint and certain interrogatory answers suggested that the Tamaris planned to pursue a fiduciary duty claim. However, the Tamaris never explained in the course of discovery the nature of the breach of duty that they sought to pursue. Considering that the gravamen of the complaint was only one of intentional and reckless conduct, Bache Lebanon was entitled to assume that if there was going to be a claim for breach of fiduciary duty, it would involve intentional conduct only.

Given this, the Tamaris argue that at the least, the court should construe the complaint as stating an independent fiduciary duty claim, based on both fraudulent conduct (as now permitted by the January 7 order) and nonfraudulent, intentional conduct; that is, the court should not limit the Tamaris to arguing breach of fiduciary duty only in connection with the CEA and common-law fraud claims. For example, the Tamaris maintain that they should be allowed to prove that Bache Lebanon as broker had a fiduciary duty to execute orders promptly and as instructed. They should then be permitted to prove that such orders were not executed promptly or as instructed, and that the account executive who failed to execute the orders did so intentionally, for reasons unrelated to a scheme to defraud.

Bache Lebanon, in the current round of briefs, does not object to this compromise construction of the complaint. Further, such a construction is in keeping with the logic of the preceding paragraphs explaining that the court refused to acknowledge a full, independent claim for breach of fiduciary duty only because it viewed the complaint as stating a claim for intentional and not negligent misconduct. Accordingly, the court clarifies the January 7, 1986 order as follows. The Tamaris will be allowed not only to argue the breach of a fiduciary duty in connection with their claims under the CEA and for common-law fraud, but also an independent fiduciary breach claim based upon nonfraudulent intentional conduct. Put another way, the Tamaris will be allowed to argue the *intentional* breach of Bache Lebanon's fiduciary duty at trial.

## 3. The Cook Grain Account

■ In its January 7, 1986 memorandum opinion, this court ruled that Bache Lebanon would be allowed to introduce the existence of certain Cook Grain documents

for purposes of impeachment. The Tamaris is now argue that this court's ruling was based on the erroneous premise that Abdallah Tamari "affirmatively testified" that he had no soybean positions with Cook Grain. The Tamaris have obviously misread the opinion:

> Bache argues that the [Cook Grain] documents are in any event relevant to the Tamaris' credibility, since the Tamaris couldn't remember the existence of the Cook Grain account despite massive trading, and since Abdallah Tamari affirmatively testified at his deposition that he had no soybean positions with Cook Grain when he allegedly did. *If these allegations are true,* subsequent trades will be relevant on credibility....

Mem.Op. p. 3 (emphasis added). Thus, the court in no way assumed what Abdallah Tamari's deposition testimony was, but put on Bache Lebanon the burden of establishing a "proper foundation" for impeachment. *Id.*

Even had this court made the above assumption, the deposition excerpt quoted by Bache Lebanon in its opposition memorandum indicates that Abdallah Tamari did in fact testify at some point that only Merrill Lynch and Bache Lebanon filled orders for soybeans. If in fact Cook Grain filled such orders, then Bache Lebanon will have established a proper foundation for impeachment. That the failure to remember may have been inadvertent does not take the impeachment from the jury, but simply provides a ground for argument. Given the volume of the Cook Grain trading, the Tamaris' lapse of memory is highly suspect, and therefore not so plainly inadvertent that this court should resolve the credibility issue on a motion in limine.

### Bache Lebanon's Motion for Summary Judgment

At the January 9, 1986 pretrial conference in this case, Bache Lebanon argued that the court's January 7 order appeared to be dispositive of the Tamaris' claim. Accordingly, Bache Lebanon was given leave to file a motion for summary judgment. In that motion, now before the court, Bache Lebanon argues two grounds upon which the motion should be granted: first, the collateral estoppel ruling in the January 7 order removed all issues of disputed fact from the litigation, and second, the doctrine of res judicata in any event bars the Tamaris from bringing this action against Bache Lebanon. Although the court does not recall discussion of this res judicata defense at the pretrial conference, it will address the issue nonetheless.

### 1. Effect of the January 7, 1986 Order

The January 7 order originally held that the CBOT arbitration decision necessarily determined that the acts of Bache Lebanon taken within the scope of its agency were not unlawful. Bache Lebanon now argues that the Tamaris' claim against Bache Lebanon is based solely on conduct taken within the scope of its authority as Bache Delaware's agent. Therefore, Bache Lebanon concludes, there are no disputed facts left to try in this case; the only issue is the lawfulness of Bache Lebanon's agency actions. Those actions were determined to be lawful in the arbitration decision and collateral estoppel compels that conclusion here.

In light of the court's clarification of the collateral estoppel ruling today, it need not address Bache Lebanon's argument that the Tamaris' claim here is based solely on acts taken within its agency authority. In that clarification the court held that collateral estoppel cannot be used to preclude the Tamaris from litigating the lawfulness of Bache Lebanon's actions. Accordingly, a summary judgment argument based on the existence of a collateral estoppel defense must fail.

### 2. The Effect of Res Judicata

Bache Lebanon argues that two prior judgments bar the Tamaris' current action against Bache Lebanon under the doctrine of res judicata: the judgment confirming the arbitration award in *Tamari v. Bache Halsey Stuart, Inc.,* Case No. 77 C 301 (N.D.Ill.1979), *aff'd* 619 F.2d 1196 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980); and the judgment dismissing the complaint in *Tamari v. Bache*

& Co. (Lebanon) S.A.L., Case No. 76 DC 21 (N.D.Ill.), aff'd 565 F.2d 1194 (7th Cir. 1977), cert. denied, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978).

### a. The Tamari Case No. 77 C 301 and the Arbitration Award

The Seventh Circuit has recently stated the traditional res judicata principles as follows:

> The doctrine of res judicata is that a final judgment on the merits in a court of competent jurisdiction bars the same parties or their privies from relitigating not only the issues which were in fact raised and decided but also all other issues which could have been raised in the prior action.... The essential elements of the doctrine are generally stated to be: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

Mandarino v. Pollard, 718 F.2d 845, 849 (7th Cir.1983) (quoting Lee v. Peoria, 685 F.2d 196 (7th Cir.1982)), cert. denied, — U.S. ——, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). For the reasons that follow, the court finds that res judicata should not be applied to Tamari Case No. 77 C 301, or the arbitration decision which was confirmed by that case.

■ As the quotation from Mandarino indicates, res judicata will not bar a subsequent action unless the prior action went to a judgment on the merits. In this case, when the CBOT rendered its decision and dismissed the counterclaim against Bache Delaware, it determined that Bache Delaware was not liable to the Tamaris. This decision was on the merits (the Tamaris do not contend otherwise). Furthermore, a decision on the merits of an action against a principal is res judicata to a subsequent action against the agent (which Bache Lebanon may or may not be) if the prior action concerned a matter within the agency. See, e.g., Lambert v. Conrad, 536 F.2d 1183 (7th Cir.1976). The rule is stated more precisely in the Restatement:

> If two persons have a relationship such that one of them is vicariously respon-

sible for the conduct of the other, and an action is brought by the injured person against one of them ...

> (1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:

> . . . . .

> (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

Restatement (Second) of Judgments § 51 (1980).

■ Here, if the CBOT dismissal of the counterclaim was based on a finding that Bache Lebanon's acts were *not* within the scope of its agency, then the dismissal would be based on a defense personal to Bache Delaware; the limited scope of Bache Lebanon's agency authority is a defense to Bache Delaware's vicarious responsibility that only Bache Delaware can invoke. In such a case, the dismissal, although based on the merits of Bache Delaware's liability, would not be based on the merits of Bache Lebanon's liability. Accordingly, it would be inappropriate to apply res judicata to the acts for which no decision on the merits had been rendered. See Lober v. Moore, 417 F.2d 714, 718 n. 31 (D.C.Cir.1969) (stating in dictum "[i]f it were possible that the employer's exoneration by the [prior] Virginia judgment came in consequence of a finding that the employee acted beyond the scope of his employment, the judgment would not merit conclusiveness here [in the subsequent action against the employee]").

Of course, as discussed at length earlier, the court cannot tell whether the dismissal in Bache Delaware's favor was based on a finding that Bache Lebanon's acts were inside or outside of its agency authority. Based on the pleadings, arguments, evidence, and CBOT decision, this court has no way of knowing how broad or narrow the CBOT found the agency relationship between Bache Lebanon and Bache Del-

aware to be. What the court does know is that Bache Delaware refused to admit an agency relationship with Bache Lebanon which included some or all of the acts and omissions alleged by the Tamaris. For example, Bache Delaware's Counterclaim Answer denies all allegations which include references to an agency relationship. In particular, some of the paragraphs in the counterclaim contain numerous allegations, some of which Bache Delaware selectively admitted and others it denied. But when Bache Delaware would choose to selectively admit allegations contained within a particular paragraph, it would *not* selectively admit the agency allegation. For example, see Counterclaim ¶ 15(b) and compare it to Answer ¶ 24. Furthermore, despite the extended efforts of the Tamaris during the CBOT proceedings to elicit testimony from adverse witnesses that Bache Lebanon was a full agent of Bache Delaware, Bache Delaware still never stipulated or admitted to the agency relationship. Indeed, such testimony was elicited only over the objections of Bache Delaware. (CBOT Tr. dated 1–7–76 at 43). Thus while the CBOT certainly saw much evidence of some sort of agency relationship, the most reasonable interpretation of the arbitration pleadings and record is that Bache Delaware sought to defend itself on *all* possible grounds, including but not limited to the personal defense that Bache Lebanon's acts were not conducted within an agency authority. However, because the court cannot determine whether or not the arbitration decision was based on a defense personal to Bache Delaware (the lack of agency authority for Bache Lebanon's actions), the arbitration decision and Tamari Case No. 77 C 301 cannot bar this action under the doctrine of res judicata. *See Hartmann v. Time, Inc.*, 166 F.2d 127, 139 (3d Cir.1947), *cert. denied*, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948); 1B *Moore's Federal Practice* ¶ 0.409[7.–1], at 344 (2d ed. 1984); *cf. Harl v. LaSalle*, 679 F.2d 123, 126 & n. 5 (7th Cir.1928) (implying in dictum that an ambiguous dismissal precludes application of res judicata).

b. *The Tamari Case No. 76 C 21—The Injunction Action*

The Tamaris filed Case No. 76 C 21 against Bache Lebanon, Bache Delaware, and the CBOT in an effort to obtain a stay of the CBOT arbitration proceedings. The complaint in that case was virtually identical to the complaint in the instant action. Therefore, Bache Lebanon argues, and the Tamaris do not disagree, the second element required for application of res judicata—the identity of the causes of action—is satisfied. Further, the complaint in 76 C 21 was filed against Bache Lebanon, so there is also no question that the third element relating to identity of the parties is present here. The dispute here is whether the dismissal of 76 C 21 was on the merits.

Judge Grady dismissed 76 C 21 by way of Minute Order on May 19, 1976. His order stated: "For the reasons expressed in the court's Preliminary Opinion of April 21, 1976, the court finds that this complaint fails to state a claim upon which relief can be granted, and, accordingly, the complaint is dismissed." As it turns out, the April 21 Preliminary Opinion does not explicitly state the reasons for dismissing 76 C 21. Of course, in the absence of any reasons indicating otherwise, a dismissal for failure to state a claim is necessarily a dismissal on the merits. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981). The Preliminary Opinion does state that the current case, 75 C 4189, should be dismissed as to Bache Delaware because, at that time, the CBOT arbitration proceedings were pending and any court action against Bache Delaware was therefore premature. *See* Prel.Op. at 2. The opinion also goes on to explain that this case, again 75 C 4189, should not be dismissed as against Bache Lebanon because Bache Lebanon is not a party to the arbitration, and in any event, the Tamaris are entitled to maintain an action against Bache Lebanon for acts beyond its agency, if there in fact was an agency. *Id.* at 2–3. In concluding the Preliminary Opinion, Judge Grady summarized: "The Court's preliminary impres-

sion, then, is that both causes [76 C 21 and 75 C 4189] should be dismissed as against BD, Case 76 C 21 should be dismissed as against the defendant Board of Trade, and that both causes should then be consolidated as to the remaining defendant, BL."

■ Thus, on May 19, 1976, when Judge Grady dismissed 76 C 21 for "failure to state a claim upon which relief can be granted" (admittedly a decision on the merits), and simultaneously incorporated his April 21 opinion, his dismissal of 76 C 21 only extended to Bache Delaware and the CBOT. There was no dismissal, let alone a dismissal on the merits, of 76 C 21 as to Bache Lebanon. Indeed, Judge Grady expressly stated in the April 21 opinion that the 76 C 21 action as to Bache Lebanon was to be consolidated with this action. Therefore, the May 19, 1976 order was not a dismissal on the merits of any cause of action against Bache Lebanon.

### Conclusion

The court reconsiders its January 7, 1986 order as follows: The Tamaris are not barred under the doctrine of collateral estoppel from litigating the lawfulness of any of the acts of which they accused Bache Lebanon in their counterclaim before the CBOT and then again in this action. The Tamaris will be allowed to argue at trial that Bache Lebanon intentionally breached its fiduciary duty to the Tamaris, in both a fraudulent and nonfraudulent manner. Bache Lebanon will be allowed to introduce the existence of certain Cook Grain documents for purposes of impeachment. Bache Lebanon's motion for summary judgment is denied. Trial is set for May 5, 1986.

It is so ordered.