**Michael J. McKEON and R. Dean Peterson, Plaintiffs,**

v.

**TOLEDO, PEORIA AND WESTERN RAILROAD COMPANY and/or Atchison, Topeka and Santa Fe Railway Company, Defendant.**

No. 84–1189.

United States District Court,
C.D. Illinois,
Peoria Division.

Oct. 5, 1984.

Robert J. Lenz, Bloomington, Ill., for plaintiffs.

Ronald A. Lane, Chicago, Ill., Robert V. Dewey, Peoria, Ill., for defendant.

## MEMORANDUM OPINION

MIHM, District Judge.

### FACTUAL BACKGROUND

Prior to 1980 the Toledo, Peoria and Western Railroad Company was a 50%-owned subsidiary of the Atchison, Topeka and Santa Fe Railway Company. The other 50% of TP & W's capital stock was owned by the Pennsylvania Transportation Company. On July 20, 1979 the Santa Fe

Railway reached an agreement with the Pennsylvania Transportation Company under which it purchased the other's 50% interest in TP & W. In a decision dated December 17, 1980 the Interstate Commerce Commission approved the sale of all of the Pennsylvania Company's stock to the Santa Fe Railway.

Because the transaction involved the merger of a wholly-owned subsidiary and was thus classified as a "corporate simplification", the Santa Fe Railway Company was exempt from the requirement of Commission approval. Therefore, a special agreement incorporating the *New York Dock* conditions for employee protection was necessary. This was effected in a Notice of Exemption dated August 17, 1983, stating:

"... accordingly, as a condition to use of the subject exemption for this merger, any employee of TP & W or Santa Fe affected by the merger shall be protected pursuant to the conditions in *New York Dock.*"

At the time of the merger, the Plaintiff Michael McKeon had been employed by TP & W since September of 1979, and the Plaintiff R. Dean Peterson since June 30, 1972. Both were, therefore, covered under the employee protection agreement.

A further term of the merger was the abrogation of an agreement between TP & W and Consolidated Rail Corporation (Conrail), which guaranteed the maintenance of existing rates, routes and services of TP & W. Thereafter, in June of 1981, Conrail closed the Logansport Gateway. The Plaintiffs claim that, as a result of that closing, both lost their positions on November 1, 1982 in violation of the protection agreement under *New York Dock.* The Plaintiff McKeon claims losses of $94,-482.83 and the Plaintiff Peterson claims losses of $38,981.52.

The issue presented for resolution is whether this Court has jurisdiction to decide the applicability of the protective conditions of *New York Dock* in this case.

## THE POSITION OF THE DEFENDANT

The Defendants claim that the employee protection arrangement under which Plaintiffs seek relief includes mandatory arbitration, and that this arbitral remedy is exclusive, depriving the Court of the authority to hear this case. The claim is that the controlling law is set out in the "conditions" of *New York Dock Railway-Control-Brooklyn Eastern District*, 360 ICC 60 (1979). The relevant portion of the *New York Dock* conditions is section 11, which establishes a grievance mechanism to resolve, through final and binding arbitration, disputes relative to the interpretation, application, or enforcement of its provisions.

Section 11 reads in relevant part:

"Arbitration of Disputes. (a) in the event a railroad and its employees or their authorized representatives cannot settle any dispute or controversy with respect to the interpretation, application or enforcement of any provision of this appendix, except sections 4 and 12 of this article I, within 30 days after the dispute arises, it may be referred by either party to an arbitration committee."

Although the language of the section implies that arbitration is discretionary, it is the contention of the Defendants that the federal courts have definitively established over the years that the arbitration remedy is compulsory and exclusive, and that the courts lack jurisdiction of claims under those conditions. The Defendant places particular emphasis on *Walsh v. United States*, 723 F.2d 570 (7th Cir.1983), arguing that this case decisively establishes the Seventh Circuit position that Plaintiffs have a plain, effective and compulsory arbitral remedy. For that reason, Defendants maintain Plaintiffs' complaint should be dismissed.

A second issue is raised by the Defendants' motion. Does the fact that TP & W's corporate existence had ceased but its rights, interests and liabilities have devolved by operation of law upon Santa Fe require the dismissal with prejudice of any

claim against TP & W? Santa Fe is currently named as a co-defendant in the case.

## THE POSITION OF THE PLAINTIFF

Addressing first the motion for dismissal, Plaintiffs claim *Walsh v. United States,* supra, does not address the issue before the Court because the Seventh Circuit "... was not presented with the issue of whether an employee has a private right of action against a railroad for the denial of protective conditions under the *New York Dock* decision."

Plaintiffs rely heavily on *Modin v. New York Central Company,* 650 F.2d 829 (6th Cir.1981), in which the Sixth Circuit, citing *Norfolk and Western Railway Co. v. Nemitz,* 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198, stated:

> "Employees have a private right of action for damages against a railroad for violation of the employee arrangements imposed by the ICC in connection with the approval of railroad mergers."

The Plaintiffs argue that, since *Modin* was decided nearly two years after *New York Dock,* the Sixth Circuit must have been aware of the arbitration provisions contained in *New York Dock* when it ruled that employees do have a private right of action for redress of violations of protective conditions. Apparently, Plaintiffs believe that *Modin* bears more directly on the question than does *Walsh,* which is the Seventh Circuit case.

The Plaintiffs further argue that Defendants' failure to comply with a 90-day notice provision of the *New York Dock* conditions constitutes a waiver of the right to mandatory arbitration. They have alleged that they were given two weeks' notice of the change or elimination of their positions.

With respect to the summary judgment alternative in Defendants' motion, Plaintiffs claim there exist genuine issues of material fact making summary judgment inappropriate. And, in response to Defendants' move to dismiss the action against TP & W, Plaintiffs cite Illinois Revised Statutes, ch. 32, § 157.94 to the effect that an action may be brought against the dissolved corporation up to two years after its dissolution.

## DECISION

There appear to be three steps involved in the resolution of a complaint such as the one Plaintiffs present. The first step is a factual determination of whether the specific action or omission complained of is a result of the merger. The second is a determination by the ICC of whether or not that action violates the applicable employee protection arrangement. The third and final step is a decision by the federal court, on appeal, that the ICC's decision is or is not arbitrary and capricious.

In this case, Plaintiffs are alleging that the loss of their jobs is a direct result of Conrail's closing of the Logansport Gateway and a violation of the protections afforded them by *New York Dock* and by 49 U.S.C. § 11347 (which the courts generally agree is a codification of the *New York Dock* conditions). Because of the attenuation between the merger itself and the loss of Plaintiffs' jobs, it would seem that the case would require a factual determination of whether the merger did in fact cause the loss. Thus, it is a step one problem.

Defendants' contention that "the federal courts have definitively established that this arbitration remedy is compulsory and exclusive, and the courts lack jurisdiction of claims under these conditions", seems to be a fair and accurate one. Such decisions have come down in the Fifth, Sixth, Seventh and Eighth Circuits. Of particular interest is the pre-*New York Dock* case of *Burlington Northern, Inc. v. American Railway Supervisor's Association,* 503 F.2d 58 (1974), the Seventh Circuit case. The case involved a merger of railroads under the Railway Labor Act. The ICC had imposed, as a condition of its approval of the merger, an employees' merger protection agreement which included an agreement to arbitrate. The court held that, "when an agreement to arbitrate is one of the protections afforded employees under § 5(2)(f) of the Interstate Commerce Act the obligation to arbitrate will be enforced by the courts."

In 1979, the ICC decided *New York Dock,* supra, in which the Commission developed and standardized the requirements of employee protection which are to condition its approval of mergers. These conditions include a section 11 which establishes a grievance mechanism, subsection (a) of which was set out above. Subsection (e) reads as follows:

"(e) In the event of any dispute as to whether or not a particular employee was affected by a transaction, it shall be his obligation to identify the transaction and specify the pertinent facts of that transaction relied upon. It shall then be the railroad's burden to prove that factors other than a transaction affected the employee."

The Eighth Circuit case, *Sorensen v. Chicago & M.W. Transportation Co.,* 627 F.2d 136 (8th Cir.1980), was decided after *New York Dock* and held that arbitration deprives the court of jurisdiction over alleged violations of protective conditions.

On December 13, 1983 the Seventh Circuit decided *Walsh v. United States,* supra. Plaintiffs rightly point out that the court in *Walsh* is construing the Staggers Rail Act; however, the court's analysis makes clear that they feel that the relationship between the Staggers Rail Act and the conditions of *New York Dock* is very clear and straightforward. The court notes that § 219(g) requires the ICC to provide employees of rate bureaus with arrangements no less protective than those established pursuant to 49 U.S.C. § 11347. The Seventh Circuit court quoted the ICC in *Western Railroads-Agreement,* 364 ICC 782 (1981) as follows:

"It is clear that Congress intended that affected employees of these [rate] bureaus are to have at least the same minimum protection as granted to rail employees affected by mergers, acquisitions, consolidations and similar transactions. These protections developed pursuant to 49 U.S.C. § 11347 are set forth in *New York Dock.*"

The Court goes on to say, "accordingly, we do not dispute the ICC's determination that the minimum protective arrangements established pursuant to 49 U.S.C. § 11347 are, in fact, the *New York Dock* conditions." The court then bases the rest of its analysis, and apparently its opinion, on the *New York Dock* conditions.

After noting that the phrase "may be referred by either party to an arbitration committee" would ordinarily connote discretion, the court said that the real meaning of "may" is dependent on the intention of the legislature to confer a discretionary power or to impose an imperative duty. Thus, the court found it necessary to determine the ICC's intention in using the word "may". Following its examination of the language of the ICC in *New York Dock* and language of the United States Supreme Court in interpreting a similar provision of the Railway Labor Act, the court decided:

"Based upon the deference due the ICC's interpretation of its own language and the Supreme Court's directive we conclude that the *New York Dock* conditions impose mandatory arbitration for disputes such as petitioner's that require a factual determination of whether or not a rate bureau employee's dismissal was caused by the ICC's deregulation of a rate bureau industry."

The court went on to dismiss, as of no consequence, the petitioner's status as a non-union employee. This could have been, but was not, raised as an issue in this case.

It appears that, although the Seventh Circuit in *Walsh* is construing the Staggers Rail Act, in effect and in actuality its analysis is also of the *New York Dock* conditions and whether or not arbitration under those conditions is mandatory.

In *Walsh,* the ICC had refused to hear a case involving a factual dispute under § 219(g) and the plaintiff petitioned the Seventh Circuit to review the ICC's decision dismissing petitioner's complaint. The Seventh Circuit affirmed that decision of the ICC based on the foregoing analysis.

It seems clear that the Seventh Circuit is saying that the initial factual dispute must be submitted to arbitration,

**770**

that only *after* such arbitral finding is the ICC required to make a decision regarding whether or not the protective conditions have been violated, and only when the ICC decision is appealed is there jurisdiction for a court to review. That review rests appropriately with an *appellate* court and the standard of review is whether or not the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

Thus, it would seem that this Court does lack jurisdiction in this matter and the Defendant's Motion to Dismiss is hereby GRANTED.