The CITY OF GAINESVILLE,
FLORIDA, Plaintiff,

v.

ISLAND CREEK COAL SALES
COMPANY, et al., Defendants.

No. GCA 83–0052.

United States District Court,
N.D. Florida,
Gainesville Division.

Nov. 16, 1984.

CUIT ON SEPTEMBER 18, 1985.

**514**

Ann Carlin, Asst. City Atty., Gainesville, Fla., M. Stephen Pitt, Merrill S. Schell, Wyatt, Tarrant & Combs, Louisville, Ky., for plaintiff.

Kenneth Hart, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, Fla., Janet P. Kane, Martin F. Brecker, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Island Creek Coal.

Stephen A. Oxman, Shearman & Sterling, New York City, for Enoxy Coal.

## ORDER

PAUL, District Judge.

This action was filed pursuant to the provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and the Florida RICO Act, Fla.Sta. § 895.03. Plaintiff, the City of Gainesville, Florida ("the City") seeks to recover damages against the three named defendants for alleged fraudulent conduct with regard to a contract entered into between the parties, along with a declaration of its rights under that contract.

Defendant Island Creek Coal Sales Company ("Island Creek Sales") is a corporation organized under the laws of Maine with its principal place of business in Lexington, Kentucky. It is engaged in the sale of coal, and is an indirect, wholly-owned subsidiary of Occidental Petroleum Company ("Occidental"), a corporation organized under the laws of California.

Defendant Island Creek Coal Company ("Island Creek Coal") is a corporation organized under the laws of Delaware with its principal place of business in Lexington, Kentucky. It is engaged in the business of mining, producing, and selling bituminous coal. It is also indirectly wholly owned by Occidental.

Enoxy Coal, Inc. ("Enoxy") is a corporation organized under the laws of Delaware with its principal place of business in Lexington, Kentucky. Incorporated in 1981, Enoxy is jointly owned by Occidental (through its subsidiaries) and Ente Nazionale Idrocarburi, ("ENI") the National Hydrocarbons Board of Italy.

The following facts are undisputed by the parties. In 1977, the City seeking to secure a long term supply of coal for its Deerhaven II electrical generation facility, began negotiations with defendant Island Creek Sales. In 1978, the parties entered into an agreement under which the City agreed to purchase, and Island Creek Sales to furnish approximately 450,000 tons of coal annually for a ten year term beginning January 1, 1981. Further, the City was given the option of extending the term for up to five additional five-year periods thereafter.

The "Base Price" for the coal was set at $35.64 per ton, and is subject to adjustment with changes in Island Creek Sales' "cost of mining, processing and loading". The following are items of such cost recognized by the contract:

1. Changes in amounts paid to independent contractors to mine the coal;

2. Changes in wages under the Collective Bargaining Agreement;

3. Changes in employee benefit programs under the Collective Bargaining Agreement;

4. Changes in certain Federal, State, or local tax laws;

5. Changes in cost of supplies and outside services;

6. Changes in cost of compulsory insurance or Worker's and Occupational Disease Compensation including black lung compensation;

7. Changes in cost of equipment rental and depreciation;

8. Capital expenditures and other costs attributable to changes in federal, state or local law, or changes in the Collective Bargaining Agreement;

9. Changes in royalty payments resulting from changes in the Base Price.

Plaintiff's memorandum in response, pg. 8.

In addition, the contract provides that Island Creek Sales be guaranteed a profit of at least $4.25 per ton, and rebate to the City one-half of any profit in excess of $6.00 per ton. These profit levels are tied to and fluctuate with the Consumer Price Index.

The Agreement provides that the coal supplied to the City is to be mined and processed primarily at the "Holden 22" mine in West Virginia. Coal may be substituted from another source, however, under certain conditions. At the time the parties entered into the contract, Island Creek Coal owned the mineral rights to, and operated, the Holden 22 site. Island Creek Coal was therefore deemed to be the "Producer" of the coal under the contract, and its costs were deemed to be those of the "Seller", Island Creek Sales, for purposes of the base price adjustment and guaranteed profit clauses referred to above.

The assignment of the rights and obligations of the parties to the contract is subject to the following provision:

This Agreement and the rights and obligations hereunder shall not be assigned by either party without the prior written consent of the other party, which written consent shall not be unreasonably withheld; provided, however, that either party may without such consent merge or consolidate with another solvent corporation which assumes all of the obligations and liabilities of the assigning party, and no such merger, consolidation or sale shall be deemed a breach hereof.

The contract also contains an arbitration clause, which provides:

Any controversy, claim, counterclaim, defense, dispute, difference or misunderstanding arising out of or in relation to this Agreement, or the alleged breach thereof, which the parties are unable to settle by agreement, shall be settled by arbitration before a Board of three arbitrators selected in accordance with the Commercial Arbitration Rules of the American Arbitration Association as then in effect.

The arbitration proceeding shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect, and judgment upon any award rendered by the said Arbitration Board may be entered in any court having jurisdiction thereof.

This provision shall survive the termination of this Agreement. Each party shall bear the expense of its own representation and any other expenses of the arbitration proceedings shall be shared equally by Buyer and Seller.

Delivery of coal under the contract actually began in November of 1980, to the apparent satisfaction of the parties. However, the price of coal available on the open market subsequently dropped to a level significantly below the contract price.

In October 1981, Occidental and ENI entered into a joint venture with respect to some petrochemical and coal operations. Ownership of certain property was transferred to the venture, which commenced operations on December 29, 1981. Owner-

ship of the Holden 22 site was transferred to the venture entity responsible for coal operations, Enoxy Coal, under the terms of a "Coal Properties Agreement", which further provided that Island Creek Coal would assign the Gainesville-Island Creek Sales contract to Enoxy, who would "become the producer of coal to be supplied under [the contract] and ... receive the proceeds from all coal shipped pursuant thereto".

Island Creek Sales then sought the City's consent to its assignment of the contract to Enoxy, which consent was not forthcoming. Occidental, ENI and Island Creek Coal proceeded to closing under the Coal Properties Agreement, amending that agreement to provide that Enoxy would sell Island Creek Sales all the coal which Island Creek Sales was obligated to deliver to the City under their contract, and that Island Creek Sales would pay Enoxy a price equal to the price received from the City. Thus, on December 29, 1981, Island Creek Coal's interest in the Holden 22 mine site was transferred to Enoxy.

In January 1983, the City demanded arbitration under Article XIII of the contract. In its demand, filed with the American Arbitration Association, the City sought a "declaration that Island Creek Coal Sales Company has breached the Agreement and that [the City] has the right to terminate it". The nature of the dispute was described in the demand as:

> Breach of contract in that Island Creek Coal Sales Company breached the attached "Coal Sales Agreement" due, *inter alia*, to conveyance of the source mine to a third person; by permitting a third person not contemplated in the Agreement to become the "Producer" of coal to be produced pursuant to the Agreement; and by assigning its obligations under the Coal Sales Agreement to a third person without the consent of the City of Gainesville.

The arbitration hearings were held in Louisville, Kentucky, at the City's request, on May 10–11, 1983, before a panel of three arbitrators selected by the American Arbitration Association. The parties submitted evidence and elicited testimony from ten witnesses during these hearings. At the end of the hearings, a briefing schedule was established; the arbitrators were to render their decision by September 1, 1983. Five days later, on May 16, 1983, the City announced it was terminating its contract with and would no longer accept coal from Island Creek Sales.

Upon being notified of the City's termination of the Contract, Island Creek Sales moved to reconvene the arbitration panel and sought an award requiring the City to continue performing the contract until a decision could be rendered by the arbitrators. The arbitrators entered an interim award under which the City was to maintain the status quo until further decision by the panel. The City continued to refuse to accept coal from Island Creek Sales, however, contesting the validity of the interim award. This award was confirmed by the United States District Court for the Western District of Kentucky in an order dated July 22, 1983.

One week later, the City filed the present action. The complaint states five counts against the defendants. Count One seeks a declaration that the arbitrators' interim order is without legal effect and therefore not binding upon the City. Count Two demands judgment of treble damages against all defendants for violation of RICO, 18 U.S.C. § 1962(c) and (d). Count Three alleges the same RICO claim as Count Two, with an alternative theory of damages. Count IV alleges violation of Florida Statutes § 943.462 and § 943.464, now § 895.03 and § 895.05, the Florida RICO Act, and demands treble damages thereunder. Count V claims damages for alleged common law fraud under the laws of Florida and Kentucky.

By order dated June 24, 1983, the United States District Court for the Western District of Kentucky enjoined the City from proceeding with Count One of this action, on the grounds that it had exclusive jurisdiction over the matters involved in that claim. Defendants have moved to dismiss Counts Two, Three, and Four for failure to

state claims, for summary judgment as to Counts Two, Three, Four, and Five, and for stay of this action pending arbitration. The Court has previously denied the motion for stay and entered an order restraining defendants from further proceeding with pending related arbitration in Kentucky until further order of the Court (doc 64). On September 22, 1983, the arbitration panel issued a final award in which they unanimously found that defendant Island Creek Sales had not breached its Agreement with the City under any of the three theories advanced by the City.

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed.R. Civ.P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In determining whether this burden has been met, the Court must view the evidence in the light most favorable to the non-moving party, and draw all factual inferences in that party's favor. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981); *United States v. Hangar One, Inc.*, 563 F.2d 1155 (5th Cir. 1977). The Court may not resolve any dispute of material fact; the motion must be denied if such an issue is found to exist. *Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 824 (11th Cir.1984); *Cole v. Chevron Chemical Co.*, 427 F.2d 390, 393 (5th Cir.1970), *cert. denied*, 414 U.S. 858, 94 S.Ct. 67, 38 L.Ed.2d 109 (1973).

 Defendants assert that this action is barred by the doctrine of collateral estoppel on the basis of the City having unsuccessfully litigated the factual issues involved here in the prior arbitration proceeding. Our Court of Appeals recently listed the three prerequisites to the application of collateral estoppel as:

1) that the issue at stake be identical to the one involved in the prior litigation; 2) that the issue have been actually litigaged in the prior litigation; and 3) that the determination of the issue in the prior litigation have been a critical and necessary part of the judgment in that earlier action.

*Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1501 (11th Cir.1984), *citing Deweese v. Town of Palm Beach*, 688 F.2d 731, 733 (11th Cir.1982). The doctrine bars relitigation of "any particular legal or factual issue" meeting these prerequisites. *Walton Motor Sales, Inc. v. Ross*, 736 F.2d 1449, 1456 n. 12 (11th Cir.1984).

 The first issue the court must decide is whether the arbitration proceeding constitutes a "prior litigation" entitled to preclusive effect. Valid arbitration decisions are accorded *res judicata* and collateral estoppel effect. E.g., *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 172 (D.C.Cir.1981); *Maidman v. O'Brien*, 473 F.Supp. 25, 29 (S.D.N.Y.1979). For such a decision to be valid, it must be within the scope of an arbitration agreement, *Schattner v. Girard, Inc.* 668 F.2d 1366, 1368 (D.C.Cir.1981). In the present case, the City does not seriously dispute that the issues it presented to the arbitration panel regarding whether its Agreement with Island Creek Sales had been breached were within the scope of that agreement's arbitration clause.

The City does challenge the arbitration award's preclusive effect, however, on the ground that the award must be confirmed by the District Court for the Western District of Kentucky before it constitutes a "final judgment" entitled to such effect. Plaintiff cites only *Ufheil Construction Co. v. Town of New Windsor*, 478 F.Supp. 766 (S.D.N.Y.1979), for this proposition. The *Ufheil* court, in applying New York law, did state that "[t]he doctrines of *res judicata* and collateral estoppel apply to issues adjudicated in arbitration where the arbitration award has been entered as a

judgment", *Id.* at 768, but did not further and unnecessarily hold that arbitration awards must be confirmed and entered as judgments to be entitled to such effect in federal courts. Further, the Court has located no authority imposing such a requirement. Finally, it is noted that the district court in Kentucky entered an order on October 18, 1984 finally confirming the arbitration award.

The City's Demand for Arbitration raised three issues: 1) whether the Agreement was breached by conveyance of the Holden 22 mine to Enoxy, 2) whether the Agreement was breached by the substitution of Enoxy as the "Producer" of coal under the Agreement, and 3) whether the Agreement was breached by the assignment of Island Creek Sales' obligations under the Agreement to Enoxy without the City's consent. After two days of hearings and extensive briefing by the parties, the panel found the Agreement had not been breached.

■ In the present action, the City's fraud and RICO claims are all based upon the defendants' mailing of allegedly deceptive coal invoices to the City. These invoices were deceptive, the City claims, because the "Producer" costs reflected thereon were actually incurred by Enoxy, rather than Island Creek Coal, the original "Producer" under Agreement. This core allegation forms the basis for all the City's claims, including the RICO counts, which are predicated on the theory that two or more such acts of mail fraud constitute a "pattern of racketeering activity" sufficient to support a civil action under 18 U.S.C. § 1962 and Fla.Stat. § 895.05.

Significantly, the City does not allege that the invoices were fraudulent in any way other than that the "Producer costs" incorporated into them were incurred by an entity other than Island Creek Coal. There is no allegation that the costs were higher as a result of Enoxy having become the Producer. No claim is made that any such charge was improper in amount or was a cost not otherwise properly "passed through" under the terms of the Agreement. Clearly, the City's claims all revolve

around the single complaint that Enoxy was substituted as "Producer" in contravention of the Agreement, which complaint it has litigated and lost.

In sum, the Court finds that the issue of whether the disputed invoices were fraudulent as incorporating producer costs not allowable under the contract necessarily includes the issue of whether Enoxy was impermissibly substituted as Producer under the Agreement; that arbitration of this precise issue was demanded by the City, who framed the issues, fully litigated them, and lost; and that determination of the issue, as an ultimate issue to be decided, was necessary to the judgment of the arbitration panel.

■ The City argues that collateral estoppel cannot apply in this action because its federal RICO claim is a nonarbitrable statutory right bestowed by federal protective legislation, and as such was not submitted to arbitration. This argument has two flaws. First, no authority has been cited or found for the proposition that civil RICO claims, like federal Antitrust, Securities, and Title VII claims, may not be resolved by arbitration. Further, assuming this is the case, when the factual matters underlying such claims are in fact submitted to arbitration by agreement of the parties, and are thereby resolved, the parties are precluded from relitigating them in a subsequent action. *See, e.g., Schattner v. Girard, Inc.,* 668 F.2d 1366, 1369 (D.C. Cir.1981) ("Although a party is not required to arbitrate facts underlying a securities law claim, ... once the facts underlying those claims are in fact arbitrated the decision of the arbitrators is binding.") A party who has had its claims decided in arbitration may not then simply bring the same claims under new labels. *Schattner, supra,* at 1368; *Goldstein v. Doft,* 236 F.Supp. 730, 734 (S.D.N.Y.1964), *aff'd,* 353 F.2d 484 (2d Cir.1965), *cert. denied,* 383 U.S. 960, 86 S.Ct. 1266, 16 L.Ed.2d 302 (1966). In the present case, the City, having unsuccessfully litigated its claims as a contractual dispute is now seeking to bring them under the labels of fraud and RICO. Having bargained for the right to submit its disputes to arbitration, and having done

so, the City is not free to rephrase its complaint and proceed to submit its case to a different forum in hopes of a more satisfactory resolution.

Accordingly, it is ORDERED:

1. Defendants' motion for summary judgment (doc 26) is GRANTED as to Counts Two, Three, Four, and Five.

2. Defendants' motion to dismiss counts Two, Three, and Four is DENIED as MOOT.

3. The order entered by this Court on February 13, 1984 (doc 64) restraining defendants from further proceeding with arbitration styled "RE:52 181 0006–84, Island Creek Coal Sales Co., Lexington, Ky—and—City of Gainesville, Florida, Gainesville, Fla." is hereby RESCINDED.

4. In light of the Court's ruling on defendant's motion for summary judgment and plaintiff having been enjoined from proceeding with the remaining count in this action by the United States District Court for the Western District of Kentucky, this action is hereby DISMISSED with prejudice; plaintiff to take nothing.

5. The Clerk is directed to enter a final judgment in favor of the defendants on the claim of the plaintiff, the Court, however, reserving jurisdiction to hear and determine any issue of costs or fees to which defendants may be entitled.