Marilyn **BENJAMIN**, Administrator for the Estate of Marc Benjamin, and Gloria Downey, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**TRAFFIC EXECUTIVE ASSOCIATION—EASTERN RAILROADS**, Eastern Railroad Association, and Eastern Weighing and Inspection Bureau, Defendants.

No. 85 Civ. 5482 (LLS).

United States District Court,
S.D. New York.

June 14, 1988.

Much Shelist Freed Denenberg Ament &
Eiger, P.C., Chicago, Ill. (Michael J. Freed,
Kenneth A. Wexler, of counsel); Wolf Pop-
per Ross Wolf & Jones, New York City

(Robert A. Skirnick, Ellen P. Chapnick, of counsel), for plaintiffs.

Sidley & Austin, New York City (Michael W. Youkon, of counsel); Sidley & Austin, Washington, D.C. (G. Paul Moates, Per A. Ramfjord, of counsel), James S. Whitehead, Chicago, Ill., for defendants.

## OPINION

STANTON, District Judge.

Defendants' motion for summary judgment and plaintiffs' motion for a trial *de novo* raise the question of the legal effect to be given the determination of an Arbitration Board that the Eastern Weighing and Inspection Bureau ("EWIB") employees represented by plaintiffs were not "employees of a rate bureau" entitled to protective benefits under § 219(g) of the Staggers Act, 49 U.S.C. § 10101 *et seq.*, § 10706 note, when the EWIB was abolished and their employment was terminated.

## BACKGROUND

The Harley O. Staggers Rail Act of 1980 ("Staggers Act"), 49 U.S.C. § 10101 *et seq.*, eliminated antitrust immunity for collective ratemaking in the railroad industry. It was foreseen that as a consequence the railroad rate bureaus would be dismantled and their employees discharged. Accordingly, under § 219(g) of the Staggers Act, the Interstate Commerce Commission ("ICC") is required to see that rail carrier employers provide the affected railroad rate bureau employees with "fair arrangements no less protective of the interests of such employees than those established pursuant to Section 11347" of the Interstate Commerce Act. 49 U.S.C. § 10706 note. Section 11347 was enacted in 1940 to provide employees whose jobs are adversely affected by railroad mergers, acquisitions and leases with "fair and equitable" protective conditions, and under it the ICC developed various forms of labor protective conditions. The applicable protective conditions, known as the "New York Dock Conditions", *see New York Dock Railway–Control–Brooklyn Eastern District Terminal,* 354 I.C.C. 399 (1978), *modified in part,* 360 I.C.C. 60 (1979), *aff'd,* 609 F.2d 83 (2d Cir.1979), provide salary continuation for up to six years as well as other benefits not offered to plaintiffs. Disputes concerning the "interpretation, application or enforcement" of New York Dock benefits are settled by arbitration. *Walsh v. U.S.,* 723 F.2d 570, 574 (7th Cir.1983); *McKeon v. Toledo, Peoria & Western R.R.,* 595 F.Supp. 766, 769 (C.D.Ill.1984); *Swartz v. Norfolk & Western Ry.,* 589 F.Supp. 743 (E.D.Mo.1984).

In this case, protective benefits virtually identical to the New York Dock Conditions were offered to employees of the Eastern Railroad Association who were dismissed or moved to less desirable positions due to the implementation of the Staggers Act, but were not offered to the EWIB employees, represented by plaintiffs in this action, whose employment was terminated when the EWIB ceased operations. They were offered a termination payment if they signed a release of all claims against the EWIB, but the termination benefits offered them did not meet the minimum requirements of the New York Dock Conditions.

As required, the question whether the terminated EWIB employees are entitled to the more favorable benefits was submitted to arbitration. Hearings were held before a three member arbitration panel on May 14, May 15 and July 10, 1986. The parties filed pre- and post-hearing briefs, submitted documentary evidence, and were given the opportunity to present and cross-examine witnesses through oral and written testimony. The parties voluntarily exchanged documents before the hearings, but no depositions were taken and no interrogatories propounded.

On September 29, 1986 the arbitration board issued its award. A majority of the three member panel held that the work done by EWIB employees (such as establishing and monitoring agreements on methods of determining weights of shipments, volumes and numbers of carloads and shipments through intermediate points; inspection and evaluation of loss and damage; checking scales; etc.) was different from formulating and publishing rates,

that it was not implementation of the Staggers Act but other factors which caused the cessation of the EWIB's operations, and that accordingly the discharged employees of the EWIB are not entitled to the protective benefits of either § 219(g) of the Staggers Act or the ERA offer.

### Claims in this Action

In Count I of their complaint, plaintiffs allege that defendants violated § 219(g) of the Staggers Act by "unilaterally decree[ing]" that it does not apply to plaintiffs, failing to provide the required minimum protective conditions, and coercing releases by withholding termination benefits if they were not executed. In Count II, plaintiffs claim that defendants' acitons are indictable under the federal mail fraud statute, 18 U.S.C. § 1341, and constitute a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* In Count III, plaintiffs allege that defendants' actions constitute common law fraud. Count IV asserts that defendants' statements that plaintiffs were not entitled to protective benefits were breaches of fiduciary duty.

It is apparent from the foregoing, and both sides recognize, that none of plaintiffs' claims can succeed if the arbitration award is upheld and applied.

Defendants urge that the arbitration award is to be given effect, subject only to review either by the ICC, and the Court of Appeals under 28 U.S.C. § 2321(a), or by the District Court under the Railway Labor Act—and that in either event the award bars plaintiffs' claims.

Plaintiffs seek a trial *de novo,* arguing that it is required (1) to protect their right to due process of law, (2) to prevent the delegation of Article III judicial powers to arbitrators, (3) to preserve their right to a jury trial, and (4) to promote the federal policy of judicial enforcement of RICO claims. Alternatively, plaintiffs contend that their § 219(g) claim should be reviewed in accordance with the Administrative Procedure Act.

In evaluating these claims, and plaintiffs' constant emphasis on the fact that the arbitration was involuntary on their part, one must bear steadily in mind that the benefits at issue are not matters of common-law right or of contract. They are tendered by a statute (or by the ERA offer) to certain employees only, and the designated method for determining their application is arbitration. Thus, assertions about rights the plaintiffs lose by being forced to arbitrate are wide of the mark with respect to benefits whose scope is expressly to be determined by arbitration. *See Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

### DISCUSSION

I. Review of Arbitration Award

■ In adopting the protective conditions of § 11347, Congress also adopted the review mechanisms created by the ICC and the courts pursuant to § 11347. *See, e.g., Mckeon v. Toledo, Peoria & Western R.R.,* 595 F.Supp. 766, 769 (C.D.Ill.1984). Several courts have held that the limited review provisions of the Railway Labor Act ("RLA") apply to arbitration awards made pursuant to the New York Dock Conditions. *Armstrong Lodge No. 762 v. Union Pac. R.R.,* 783 F.2d 131 (8th Cir.1986); *Brotherhood of Locomotive Engineers v. New York Dock R.R.,* 94 Lab.Cas. (CCH) ¶ 13,704 (E.D.N.Y.1981); *see also Sorensen v. Chicago and Northwestern Transp. Co.,* 627 F.2d 136 (8th Cir.1980).

Defendants argue that review of an arbitration decision made pursuant to § 219(g) should initially be by the ICC, then by the United States Court of Appeals. That procedure is suggested by several merger cases under § 11347. *See Lee v. St. Louis Southwestern Ry.,* 633 F.Supp. 19 (E.D.Mo. 1986); *Atkinson v. Union Pac. R.R.,* 628 F.Supp. 1117 (D.Kan.1985); *McKeon v. Toledo, Peoria & Western R.R.,* 595 F.Supp. 766 (C.D.Ill.1984).

In *McKeon,* the court directed arbitration, contemplating a three-step process when an employee lost his job after a merger: (1) arbitration deciding whether the employee's termination was caused by

the merger, followed by (2) ICC determination whether the protective conditions had been violated, and (3) review in the circuit courts of the ICC's determination. The standard of review would be whether the ICC decision was arbitrary and capricious. 595 F.Supp. at 769–70.

In this case, the arbitration panel determined that plaintiffs were not rate bureau employees and that their job losses were not caused by implementation of the Staggers Act. Whether that decision is right or wrong, there is no question of construction of the protective conditions presented, and no reason to require review by the ICC. In fact, the ICC has indicated that they would not take jurisdiction to review the arbitration award in this case. In *Leavens v. Burlington Northern, Inc.*, 348 I.C.C. 962, 976 (1977), the Commission stated

> "The policies of the Interstate Commerce Act and the labor act necessarily must be accomodated, one to the other. *Burlington Truck Lines, Inc. v. U.S.*, [371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)] at 172 [, 83 S.Ct. at 248]." We feel that in making the accomodation this Commission should undertake to enforce these protective conditions only to the extent ... that affected employees have suffered harm in violation of the adopted conditions as a result of the transaction or to the extent that a specific condition intended to protect against a specific harm that would result from the merger ... has been abrogated. All other alleged violations of the agreement should be left to the applicable machinery set up under the labor acts so that those with the greatest expertise will be the ones to settle any disputes that are not merger related.

*Armstrong Lodge No. 762 v. Union Pacific R.R.*, 783 F.2d 131 (8th Cir.1986), and *Brotherhood of Locomotive Engineers v. New York Dock R.R.*, 94 Lab.Cas. (CCH) ¶ 13,704 (E.D.N.Y.1981), both held that § 3 of the RLA, 45 U.S.C. § 153, gives the federal district courts jurisdiction to review arbitration awards made pursuant to the New York Dock Conditions. *Brotherhood of Locomotive Engineers* involved a dispute about implementation of the New York Dock Conditions in the case in which they were originally imposed. Judge Sifton held that district courts have jurisdiction in such cases because the mandatory arbitration provision is a federal contract that is enforceable in the federal courts. 94 Lab.Cas. (CCH) at 21,829. In *Armstrong Lodge*, the court held that it had jurisdiction under the RLA because the arbitration panel is like a public law board. 45 U.S.C. § 153 First (q). Although neither theory is squarely applicable here, they support the conclusion that this court has jurisdiction to review the arbitration award pursuant to the RLA.

■ The RLA provides that an arbitration decision may only be set aside for fraud or corruption, or if the arbitration panel either fails to comply with the provisions of the RLA or exceeds its jurisdiction. 45 U.S.C. § 153 First (q); *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978); *Armstrong Lodge*, 783 F.2d at 134. Plaintiffs make no such claims. Therefore, the arbitrators' award is affirmed.

## II. Collateral Estoppel

■ A party may not relitigate a factual issue which he has already litigated and lost. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Collateral estoppel applies equally to facts that have been determined in an arbitration. *American Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674 (2d Cir.1974); *Ritchie v. Landau*, 475 F.2d 151 (2d Cir.1973); *Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F.Supp. 69 (S.D.N.Y.1982); *Maidman v. O'Brien*, 473 F.Supp. 25, 29 (S.D.N.Y.1979).

Federal law of collateral estoppel is applied to claims arising under federal law, *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971); *Maidman v. O'Brien*, 473 F.Supp. 25, 30 (S.D.N.Y.1979),

and state collateral estoppel rules are applied to state law claims. *Ritchie v. Landau*, 475 F.2d 151, 155 (2d Cir.1973). Both New York State and federal law require (1) identity of issues, and (2) a full and fair opportunity to contest the issue in the previous action, for collateral estoppel effect to be given to the earlier judgment. *Id.*

The factual issues determined by the arbitration panel were that class members were not rate bureau employees within the meaning of § 219(g) and that their loss of employment was not caused by the implementation of the Staggers Act. The same factual issues lie at the heart of plaintiffs' claims in this action. Thus, there is identity of the issues. Plaintiffs had a full and fair opportunity to litigate their claims before the arbitration panel. They obtained informal discovery, filed briefs and exhibits and had the opportunity to present and cross-examine witnesses. Therefore, plaintiffs are bound by the arbitration panel's determinations.

### III. Plaintiffs' Claims to a Trial *De Novo*

Plaintiffs advance several arguments against the collateral estoppel effect of the arbitration award. For the reasons set forth below, none has merit.

### A. Due Process

Since § 219(g) does not specifically provide for judicial review, plaintiffs say they will be deprived of their Fifth Amendment right to access to the courts unless they are granted a trial *de novo*. However, due process requires only that there be some form of judicial review, even under a narrow standard. *Textile Workers Pension Fund v. Standard Dye & Finishing Co.*, 725 F.2d 843, 855 (2d Cir.) (upholding Multiemployer Pension Plan Amendments Act which provides judicial review under a presumption that the arbitrators' decision is correct), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); *Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1277 (7th Cir.1983) (same), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984).

The Supreme Court has enforced the limited review provisions of the RLA, saying of § 153 First (q), "We have time and again emphasized that this statutory language means just what it says." *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978); *see also Gunther v. San Diego & Eastern Ry.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). Because the arbitration decision is reviewable in the district court under the RLA, plaintiffs have not been denied the right of access to the courts.

### B. Delegation of Article III Powers

■ Plaintiffs claim that, absent a right to trial *de novo*, § 219(g) represents an unconstitutional delegation of judicial power outside of an Article III court. They point to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84, 102 S.Ct. 2858, 2878, 73 L.Ed.2d 598 (1982), which held the delegation to Article I bankruptcy courts of jurisdiction over issues which would otherwise be adjudicated in State Courts unconstitutional, because the bankruptcy court's decisions could only be overturned by the district courts on a finding that they were clearly erroneous, and *United States v. Raddatz*, 447 U.S. 667, 683, 100 S.Ct. 2406, 2416, 65 L.Ed.2d 424 (1980), which upheld the delegation of authority to magistrates at the discretion of the district courts because their decisions on dispositive motions are reviewed *de novo*.

Since *Northern Pipeline*, the Supreme Court has upheld a statute that provides for mandatory arbitration with limited review by the district courts. *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed. 2d 409 (1985). In *Thomas*, the Court reviewed provisions of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), which provide for mandatory arbitration of claims between registrants for reimbursement of registration fees. FIFRA provides judicial review of the arbitrators' decision for fraud, misconduct or misrepresentation. The Court stated that *Northern Pipeline* "establishes only that Congress may not vest in a non-Article III

court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Id.* at 584, 105 S.Ct. at 3334–35. The Court held that the right to reimbursement of registration expenses created by FIFRA did not replace a common law right of action, but created a new federal right, and that Congress could grant adjudicatory power over such a claim to a non-Article III tribunal. *Id.*, 105 S.Ct. at 3335.

Like the mandatory arbitration scheme approved in *Thomas,* and unlike the statutes at issue in *Northern Pipeline* and *Raddatz,* § 219(g) does not replace a common law action, but creates a right based in federal law. Therefore, the limited review provisions of the RLA do not violate Article III, and a trial *de novo* is not required. In this context, it is important to remember that the arbitrators did not determine plaintiffs' legal claims beyond their entitlement to the claimed benefits. Although the factual findings made by the arbitrators destroy the predicate for plaintiffs' other claims, such an application of collateral estoppel has never been considered to violate Article III.

C. Seventh Amendment Right to a Jury Trial

■ Plaintiffs claim that a failure to grant them a trial *de novo* will deprive them of their constitutional right to a jury trial. The seventh amendment requires a jury trial in actions to enforce rights and remedies traditionally enforced at common law. *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). "[T]he 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." *Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970). However, the seventh amendment is generally inapplicable in administrative proceedings, where the factfinder possesses a particular expertise that makes jury determination inappropriate. *Curtis v.*

*Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

Under the *Ross* three-part test, plaintiffs' Staggers Act claim does not require trial by a jury. Section 219(g), which was enacted after the merger of law and equity, created termination benefits for employees whose jobs were imperilled because Congress was eliminating the antitrust shelter under which they worked. There is no analogous common law right to termination benefits in absence of a contractual agreement, and thus no pre-merger custom. The remedy that plaintiffs seek is a declaration that class members are entitled to benefits calculated in reference to the employee's seniority, and an award of such benefits. Declaratory relief is a traditionally equitable remedy. Finally, the question whether the work performed by plaintiffs was such that they should be classified as rate bureau employees within the meaning of § 219(g) is one entirely appropriate for resolution by arbitrators familiar with the field rather than by a jury. Courts have stressed the role of the arbitrator's expertise in railway cases. *See, e.g., Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *Gunther v. San Diego & Arizona Eastern Ry.,* 382 U.S. 257, 262, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965); *Walsh v. United States,* 723 F.2d 570, 575 (7th Cir.1983).

■ Plaintiffs argue that they are entitled to a jury trial on their remaining claims. However, the doctrine of collateral estoppel as applied to an arbitration award does not violate the seventh amendment. In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court held that an SEC enforcement action (that was tried without a jury) would be given collateral estoppel effect, even though the litigant was deprived of a jury trial, because common law courts allowed collateral estoppel regardless of the effect on a litigant's jury trial rights. As the Court stated in *Parklane,* "the party against whom estoppel is asserted has litigated questions of fact, and has had the facts determined against him in an earlier proceeding.... there is no further

factfinding function for the jury to perform." 439 U.S. at 335–36, 99 S.Ct. at 654.

### D. Judicial Enforcement of Rico Claims

■ Plaintiffs claim that a trial *de novo* is required by the federal policy of judicial enforcement of RICO claims. However, the Supreme Court recently held that a RICO claim is subject to an agreement to arbitrate, *Shearson, American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 2345–46, 96 L.Ed.2d 185 (1987), stating "there is no inherent conflict between arbitration and the purposes underlying [the RICO statute]." Other courts have held that a factual determination made in an arbitration may collaterally estop a RICO claim. *Rudell v. Comprehensive Accounting Corp.*, 802 F.2d 926 (7th Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1351, 94 L.Ed.2d 521 (1987); *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352 (11th Cir.1985); *City of Gainesville v. Island Creek Coal Sales Co.*, 618 F.Supp. 513 (N.D.Fla.1984), *aff'd*, 771 F.2d 1495 (11th Cir.1985); *Sports Factory, Inc. v. Chanoff*, 586 F.Supp. 342 (E.D.Pa.1984). The arbitration panel in this case determined that plaintiffs are not entitled to the termination benefits. This factual finding collaterally estops plaintiffs from prevailing on their RICO claim, which rests on their entitlement to those benefits.

### IV. The Administrative Procedure Act

■ Plaintiffs argue in the alternative that, if their claim is reviewed under any standard more restrictive than trial *de novo*, it should be reviewed pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* Section 704, entitled "Actions reviewable," provides that "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." The agency action involved in this case was the ICC's development of minimum protective standards that satisfy 49 U.S.C. § 11347. That action was reviewed by the Second Circuit. *New York Dock Ry. v. United States*, 609 F.2d 83 (2d Cir.1979). As stated above, the arbitrators' award is reviewable under the RLA.

Therefore, the APA does not apply to this case.

### V. Waiver of Objections to the Finality of Arbitration

Defendants argue that, by agreeing to stay this action while the arbitration proceeded, plaintiffs waived their right to object to the finality of the arbitration award. In light of the determinations made above, this issue need not be reached.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. Plaintiffs motion for a trial *de novo* is denied.

The Clerk will enter judgment dismissing the complaint, with costs and disbursements as allowed by law.